STATE OF MINNESOTA *ex rel.* H. W. CHILDS, Attorney General, *vs.*
CHARLES H. DART.

Argued April 24, 1894.  Decided May 14, 1894.

No. 8621.

**Resignation, appointment and eligibility of county treasurer.**

> During the pendency of proceedings under Laws 1881, ch. 108, for the removal of a county treasurer from his office, and suspending him from that office: *Held*: (1) He may resign or relinquish his office; (2) but that he is not eligible for reappointment to the same office for the remainder of the same term by the county commissioners until he has been acquitted, or the proceedings dismissed; (3) that his eligibility for the office during the remainder of the term is also involved in the removal proceedings which may be prosecuted for the purpose of determining that eligibility after he has thus resigned or relinquished his office.

Information filed in this court December 14, 1893, by Henry W. Childs, Attorney General, praying that a writ issue to Charles H. Dart, commanding him to appear and show *quo warranto* he holds the office of County Treasurer of Meeker County.   The information stated that the respondent Dart was elected treasurer of that county for the term commencing January 2, 1893, that he accepted the office and that the Public Examiner on September 27, 1893, made report to the Governor that Dart had received in June and July, 1893, checks from divers persons named, in payment of money due to him as such treasurer and had loaned to divers other persons considerable sums of money from the treasury and received checks therefor, and that he held the checks without presenting them for payment and treated them as money until September 27, 1893.   It further stated that the Governor thereupon suspended Dart from his office by an order made October 3, 1893, and gave notice thereof to the county auditor who convened the board of county commissioners and they appointed Dart treasurer *ad interim* (Laws 1881, ch. 108), that he accepted, and on October 11, 1893, resigned the office of treasurer and was on the following day appointed by the board treasurer to fill the vacancy and that he now claims to be such officer.

The writ was issued returnable January 4, 1894, and Dart made answer substantially admitting the statements in the relation and claiming to hold the office by virtue of his appointment of October 12, 1893, under 1878 G. S. ch. 8, § 147. He denied any intention to do any unlawful act and alleged that all checks had been paid and no loss incurred. A reply was filed and a stipulation made as to certain facts and the questions submitted for determination.

*H. W. Childs*, Attorney General, and *George B. Edgerton*, his assistant, for relator.

*Spooner & Taylor*, for respondent.

CANTY, J. This is a writ of *quo warranto* brought to try the right of the respondent to the office of county treasurer in Meeker county. He was elected to that office at the general election in November, 1892, for the term of two years, commencing January 2, 1893.

On the 27th day of September, 1893, the public examiner filed with the governor a report, under Laws 1881, ch. 108, charging respondent with malfeasance in office in this· That he received in June and July checks of divers persons for taxes and state land sold, and held them as public moneys, and so retained them until said 27th of September, and failed to present any of them for payment; and, also, that he loaned the public funds to private parties, in all amounting to the sum of $2,209.96.

On October 3, 1893, upon the filing of this report, the governor suspended respondent from his said office. On October 6th the board of county commissioners met, and by unanimous vote elected respondent county treasurer *ad interim* during his suspension.

On October 11th he resigned his office as county treasurer. In the mean time the governor had appointed a special commissioner to take and report the testimony for and against respondent, and the time for taking the same was set for October 12th, and notice given to him. He appeared specially, and objected to the jurisdiction of the commissioner, on the ground that he had ceased, on account of his resignation, to be treasurer. Afterwards, on the same day, the board of county commissioners elected him as county treasurer to fill the vacancy caused by his resignation. After-

wards the commissioner reported the testimony taken, and the governor fixed October 31st as the time of hearing, and notified respondent, and thereafter, on November 16th, made and filed an order removing respondent from the office of treasurer of said county.

The questions presented on this hearing are:

(1) Had the respondent a right to resign his office during the pendency of the proceedings for removal, and while under suspension?

(2) If so, was he eligible for reappointment by the board of county commissioners?

It seems to us he had a right to resign or relinquish his office— call it which name you will—during the pendency of the proceedings.

But we are of the opinion that he was not eligible for reappointment while under suspension, or during the pendency of the proceedings. The removal proceedings cannot be nullified or reversed in that manner. Such removal proceedings are not merely for the purpose of ousting the person holding the office; they include a charge that he has forfeited his qualification for the office for the remainder of the term. They are brought to declare a forfeiture of a civil right, his eligibility, his qualification to hold that office for the rest of that term. The proceeding is not brought for his removal from a day or a week or a month of his term, but from the whole of the remainder of his term, and the final order of removal is not made for his removal from a day or a week or a month of his term, but from the whole of the remainder of his term. Nothing less is involved in the proceedings. Whether the voters at the polls could condone the offense by which he forfeited his office it is not necessary here to decide. We are of the opinion that the county commissioners could not do so.

The fact that respondent may have had no intention to defraud the county, and that his acts were mere irregularities, which resulted in no loss to the county, were matters exclusively for the governor to consider. He was an independent tribunal. *State* v. *Peterson*, 50 Minn. 239, (52 N. W. 655.) And, as long as he kept within his jurisdiction, we cannot in this proceeding review the

questions of fact tried by him, or determine how much or how little moral turpitude there was in these irregularities.

It is ordered that relator have judgment of ouster against respondent.

BUCK, J., absent, sick, took no part.

(Opinion published 59 N. W. 190.)