THE STATE OF KANSAS, *ex rel. C. C. Coleman, as Attorney-general,* v. W. W. ROSE.*

No. 14,646.   (86 Pac. 296.)

### SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS—*Misconduct—Ouster—Eligibility for Remainder of Term.* Where a mayor ·of a city of the first class by official misconduct forfeits his office, and the forfeiture is judicially declared in a *quo warranto* proceeding, the judgment of ouster will operate to deprive him of the right to take or hold the office during the remainder of the term to which he had been elected.

2. ——— *Reelection of Ousted Officer—Contempt.* The electors of such city cannot in a special election restore that which was forfeited nor limit the effect or the enforcement of the judgment of ouster by electing the unfaithful officer for the remainder of the term forfeited.

Original proceeding for contempt.   Opinion filed July 6, 1906.   Defendant adjudged guilty.

*C. C. Coleman,* attorney-general, for The State.

*Atwood & Hooper, Nathan Cree,* and *C. F. Hutchings,* for defendant; *D. E. Bird, S. D. Hutchings,* and *Edwin S. McAnany,* of counsel.

·The opinion of the court was delivered by

JOHNSTON, C. J.: This is a proceeding to punish W. W. Rose for contempt of the supreme court in violating its judgment recently rendered against him. It appears that at the general city election in April, 1905, Rose was elected mayor of Kansas City, Kan., for the term of two years ending April 12, 1907. On September 26, 1906, the attorney-general brought an action of *quo warranto* in the name of the state to remove Rose from office, alleging that since his incumbency of the office he had purposely violated the law by licensing and protecting those who were violating the prohib-

*Taken to the United States supreme court on a writ of error, which was by that court, on October 22, 1906, dismissed for the want of jurisdiction.

The State v. Rose.

itory liquor law; that he had collected money from the
lawbreakers for such licenses and protection, and, al-
though there had been from one hundred and twenty-
five to one hundred and fifty persons openly engaged
in the illicit business, each paying fifty dollars per
month to the city for permission to carry on the illegal
traffic, with the knowledge and connivance of Rose, he
had failed to notify the county attorney of such viola-
tions or to take any of the steps prescribed by the stat-
ute for the enforcement of the law.    The defendant
denied the averments of the petition, and upon the is-
sues formed testimony was taken in behalf of both
parties.    Afterward—on April 3, 1906—Rose tendered
his resignation to the city council, which was at once
accepted.    When the case was called for trial, on April
6, 1906, the defendant, who was present in court,
asked and obtained leave to withdraw his answer, and
in effect consented that a judgment of ouster might be
entered against him, as prayed for in the petition.    The
judgment, after finding the election to, and forfeiture
of, the office, proceeds:

"Wherefore, it is by the court considered, ordered
and adjudged that the said defendant be, and he hereby
is, ousted from said office, and that he do not in any-
wise hereafter intermeddle with nor in the said office
of mayor from henceforth, nor in the liberties, privi-
leges, franchises and emoluments thereof, and that he
be henceforth for and during the remainder of said
term of two years wholly excluded and forejudged
from exercising and using the same and every of
them, and be wholly excluded and ousted from and dis-
qualified from holding said office, and from concern-
ing himself in anywise in and about the holding of or
exercising the said office of mayor of Kansas City,
Kan., and from exercising the powers and receiving
the emoluments thereof, for and during the term for
which he was elected as aforesaid.

"It is further ordered and adjudged that said de-
fendant pay the costs of this action, taxed at $———.

"Of which said judgment and order of the court let
execution issue."

Shortly after the judgment of ouster was rendered

a special election was called to fill the vacancy in the office of mayor of Kansas City, Kan. The defendant, in defiance of the judgment, became a candidate for the office, received a majority of the votes cast at the election on May 8, 1906, at once qualified and took possession of the office, and is now assuming to exercise the powers of mayor and is appropriating the emoluments of the office. Upon the complaint of the attorney-general Rose was cited before the court to show cause why he should not be punished for contempt, and later a formal accusation was filed, setting out the proceedings in *quo warranto,* the judgment of ouster, and the disregard of the judgment.

In his answer Rose substantially admitted the facts stated, but averred that he was holding the office and exercising its functions solely by virtue of the election held in May, 1906, and that the only title claimed by him was that derived from the new election and commission. He alleged that in the *quo warranto* proceeding there was nothing in issue but the title to the office dependent on the votes cast in April, 1905, and that no other right was considered or adjudged. He further averred that the court lacked power to exclude him from the office, for the reason that before the judgment was rendered he had voluntarily resigned and surrendered the office; that, in any event, the court had no power to render a judgment precluding him from taking and holding the office under and by virtue of the new election; and that to enforce such a judgment would be to deprive him of his office and of liberty without due process of law, in violation of the fourteenth amendment to the constitution of the United States, the protection of which he specifically claimed. He also alleged that in taking and holding the office under the new election he had acted in good faith, under the advice of counsel, without intention to embarrass the administration of justice or to show disrespect to the court. The matter of contempt was

finally submitted to the court on the statements and admissions made in the pleadings.

It thus appears that Rose was originally elected mayor for the term of two years ending April 12, 1907; that for official misconduct he was, in April, 1906, removed from the office by a judgment which in terms wholly ousted and excluded him from the office and adjudged that he do not intrude into it during the term for which he was originally elected. In open disregard of this judgment he is now in possession of the office, and is assuming to exercise its functions and powers. The judgment is not ambiguous, and, if it is valid, the defendant is unquestionably in contempt of the court which rendered it.

Some of his attacks on the judgment would have been entitled to more consideration if they had been made before it was finally rendered. This proceeding cannot be regarded as one to correct irregularities or errors. The judgment was rendered in a *quo warranto* proceeding wherein the court had unquestioned jurisdiction, and unless it is absolutely void it is not open to attack. It is first assailed on the ground that the court was without power to oust the defendant in a *quo warranto* proceeding, because other and adequate remedies existed for getting rid of unfaithful mayors. If this kind of an objection were available after judgment, it would not aid the defendant. He calls attention to the statutes making official misconduct a crime, one of the penalties of which is the forfeiture of the office, and also to the case of *The State, ex rel., v. Wilson,* 30 Kan. 661, 2 Pac. 828, which held that an officer could not be removed until he had been adjudged guilty of a criminal offense defined by a certain statute. That decision was based upon a statute which provided that forfeiture of office constituted a part of the penalty of the offense prescribed, and that it did not occur until a conviction was had. In that case the court recognized that the legislature had the power to provide for a forfeiture for misconduct, independent of

any criminal prosecution, but held that it had not done so in the statute then under consideration. The statute under which the present action was brought authorizes not only criminal proceedings but expressly provides for the removal of the offending officer by a civil action. (Gen. Stat. 1901, § 2462.) This remedy, it will be observed, is not incidental to the criminal proceeding, but is an additional and independent one. (*The State, ex rel., v. Foster,* 32 Kan. 14, 3 Pac. 534.) The violations of the law by the officer are not only public offenses, but in committing them he forfeits his right to the office, and this forfeiture may be judicially declared in a *quo warranto* proceeding.

The judgment cannot be deemed to be invalid because of the resignation of Rose just before its rendition. The issues were joined, testimony had been taken, and the case was ripe for trial before the resignation, and the defendant could not then, by surrendering the office, devest the court of jurisdiction nor thwart the purposes of the proceeding. The public had an interest in the action, and the judgment to be rendered was of no less consequence to it than to the individual interests of the defendant. The judgment of ouster, as Mr. High has said, "is not at all dependent upon whether the respondent does or does not claim a right to exercise the office or franchise in controversy; the question being whether he has done any act which necessarily implies a claim to its exercise. And if such act can be shown, judgment of ouster will be given, notwithstanding the usurpation has ceased before the trial. So when a statute gives the prevailing party in proceedings upon a *quo warranto* information the right to costs absolutely, the court will give judgment of ouster, notwithstanding the information is entirely fruitless, the term of office having long since expired." (High, Extra. Leg. Rem., 3d ed., § 754.) In *The State, etc., v. McDaniel et al.,* 22 Ohio St. 354, 368, the supreme court of Ohio held that resignation did not constitute a defense to an information in *quo warranto,*

The State v. Rose.

and that it was not within the power of the defendant
in cases of this character to render the proceedings in-
effectual by successive resignations.    (See, also, *At-
torney-general, ex rel. Robinson, v. Johnson,* 63 N. H.
622, 7 Atl. 381; *Hunter v. Chandler,* 45 Mo. 452, 455;
*The King v. Warlow,* 2 M. & S. [Eng. K. B.] 75.)

There remains the question, and in fact the only sub-
stantial question in the case, whether there was power
in the court to render an effectual judgment ousting
the defendant from the office for the remainder of the
term to which he had been chosen.   By the terms of
the judgment he was not only ousted for the moment
but for the entire term.   While the judgment expressly
deprives the defendant of any right for the balance of
the term to the office forfeited for his misconduct, it is
not certain that it is any more effective than would have
been a general judgment of ouster.   If the unlawful
acts pleaded and proved operated to forfeit the office
for the term to which Rose was elected, a judgment in
general terms declaring a forfeiture would probably
take from him all that he had forfeited.   What was
involved in the proceeding, and of what was the de-
fendant deprived by the ouster?   It was the office of
mayor, with its rights and privileges.   The office is a
trust conferred by public authority, for a public pur-
pose, and for a definite time.   Mr. Justice Swayne said:
"An office is a public station, or employment, conferred
by the appointment of the government.   The term em-
braces the ideas of *tenure, duration,* emolument, and
duties." (*United States v. Hartwell,* 73 U. S. 385, 393,
18 L. Ed. 830.)   In the case of *In the Matter of Oaths
to be taken by Attorneys and Counselors,* 20 Johns.
(N. Y.) 491, an "office" was defined to be "an em-
ployment on behalf of the government, in any station
or public trust, not merely *transient, occasional* or *in-
cidental.*" (Page 493.)   In defining "public office" the
court of appeals of New York said:   "It means a right
to exercise generally, and in all proper cases, the func-
tions of a public trust or employment,   .   .   .   and

to hold the place and perform the duty *for the term* and *by the tenure* prescribed by law." (*Matter of Hathaway,* 71 N. Y. 238, 244.)

The office of mayor, which was conferred on the defendant at the general city election of 1905, was not a transient or occasional trust. The office, with its rights and privileges, was given to him for a fixed time. It was a two-year trust; an entire thing. It has been said that, "in legal idea, an office is an entity, and may exist in fact, though it be without an incumbent." (*People v. Stratton,* 28 Cal. 382, 388.) The same court later said that in legal contemplation "each term of an office is an entity separate and distinct from all other terms of the same office." (*Thurston v. Clark,* 107 Cal. 285, 288, 40 Pac. 435. See, also, *Wardlaw v. Mayor, etc., of City of New York,* 19 N. Y. Supp. 6, 7; *State of Iowa v. Welsh,* 109 Iowa, 19, 79 N. W. 369.)

The right to exercise the functions of the office of mayor and to enjoy its privileges for the two-year term was an entity conferred on the defendant, and it was that which was taken from him in the *quo warranto* proceeding. The resignation or the removal of an officer during his term and the election or appointment of a successor do not divide the term nor create a new and distinct one. In such a case the successor is filling out his predecessor's term; and when the defendant reentered the office and undertook to exercise its duties he was simply serving a portion of the very term which the court had decided that he was unfit to hold. Since under the law he forfeited and was ousted from the right to occupy the office for the remainder of the term, no subsequent election or appointment could restore to him that which he was adjudged to have forfeited and lost. The electors of the city are as much bound by the law and the judgment rendered in pursuance of the law as their representatives and officers, and the special election did not warrant the defendant in ignoring or violating the judgment rendered under the law.

In *State of Iowa v. Welsh,* 109 Iowa, 19, 79 N. W. 369, the supreme court of Iowa went so far as to hold that an officer might be removed during the term for which he had been reelected for official misconduct or neglect of duty during his previous term. After remarking that the object of the proceeding of removal from office is to rid the community of a corrupt, incapable or unworthy official, it was said:

"The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be entrusted with the performance of the duties of the particular office as though done the day after. The fact of guilt with respect to that office warrants the conclusion that he may no longer with safety be trusted in discharging his duties." (Page 23.)

It is not necessary to go to that extent in this case, but certainly the misconduct of which the defendant was found guilty stamps him as one not entitled to be entrusted with the duties of the particular office forfeited during the remainder of the term. The case of *State v. Jersey City,* 25 N. J. Law, 536, appears to hold a contrary view; but a case more nearly in point, and which is in accord with our judgment, is *State, ex rel., v. Dart,* 57 Minn. 261, 59 N. W. 190. There a county treasurer was removed in a proper proceeding for the misappropriation of public funds. Afterward the board of county commissioners, which had authority to fill the vacancy, elected him to fill out the term. The question arose whether there was power in the board to reinvest him with the office in that manner. In deciding that there was not the supreme court of Minnesota said:

"The removal proceedings cannot be nullified or reversed in that manner. Such removal proceedings are not merely for the purpose of ousting the person holding the office; they include a charge that he has forfeited his qualification for the office for the remainder of the term. They are brought to declare a forfeiture of a civil right, his eligibility, his qualification to hold that office for the rest of that term. The proceeding is not brought for his removal from a day or a week

or a month of his term, but from the whole of the re-
mainder of his term. . . . Nothing less is in-
volved in the proceedings. Whether the voters at the
polls could condone the offense by which he forfeited
his office it is not necessary here to decide. We are of
the opinion that the county commissioners could not
do so." (Page 263.)

At the argument the question was mooted whether
a county attorney who had been removed from office
could be reappointed during the term. The statute
authorizing removal would serve little purpose if the
district judge could appoint the unfaithful officer for
the term forfeited and thus again invest him with the
office and the opportunity to continue the violations of
duty and of the law. Suppose a county clerk who was
engaged in peculation with the connivance of the board
of county commissioners was removed from office: the
board, which has the power to fill the vacancy, might
be willing to give the defaulter a new lease of power to
continue his frauds against the public until the end
of the term, but to allow it to be done would be trifling
with justice. No such purpose can reasonably be im-
puted to the legislature.

Counsel for the defendant were inclined to concede
that an officer removed for dereliction of duty could
not be reappointed to fill the vacancy, but contended
that a different rule obtains where provision is made
for filling the vacancy by election. No room is seen
for a distinction between an appointment and an elec-
tion. The protection of the public is involved in the
proceeding and judgment. Nothing in the statute sug-
gests that electors, even, can condone the misfeasance,
revive the forfeited right, or limit the effect or en-
forcement of a judgment of ouster.

It is said that this proceeding involves the title to
an office, which can only be questioned in a direct pro-
ceeding, and that a contempt proceeding cannot be
transformed into a *quo warranto* action. The deter-
mination of the title to the office is not directly drawn

The State v. Rose.

in question in this proceeding. The real inquiry is, Has the defendant violated the judgment rendered? That involves the scope and effect of the judgment and whether the defendant has intruded into the office and is doing that which the judgment forbids. The right to the office is only incidental to the main question: whether he is acting in disobedience and contempt of the judgment of the court. It is conceivable that a person removed from office might, for some purposes, be regarded as a *de facto* officer and yet be in contempt of a court which prohibited him from occupying the office. An ousted officer might again and again, in some illegal way, gain possession of the office and such recognition in it as would give validity to his acts, but it would hardly be contended that the only way by which the state could meet such contumacy and enforce the court's judgment would be to bring repeated *quo warranto* proceedings.

The contention that to deprive the defendant of the right to hold the office for the remainder of the term is to take away a right from him without due process of law is not well founded. He is only made to suffer the penalty imposed for misconduct in office and violation of law. The office is created by statute. The grounds of forfeiture are prescribed by statute, and the statute provides the method by which the forfeiture is declared. The defendant has no vested right to the office, and especially none which may not be forfeited and lost by misfeasance. Having violated the statute, he must suffer the penalty which the statute prescribes. Having disobeyed and violated the judgment lawfully rendered and still in force, he is in contempt of this court, and is therefore adjudged to pay a fine of $1000 and the costs of this proceeding; and, if the fine and costs be not paid within twenty days, he shall be committed to the jail of Shawnee county until they are paid.

All the Justices concurring.