THE STATE, *ex rel. C. C. Coleman, as Attorney-general,*
v. W. W. ROSE.

No. 14,646.   (97 Pac. 788.)

SYLLABUS BY THE COURT.

FINES—*Imposition by Supreme Court—Disposition of Proceeds.* The proceeds of a fine imposed by this court in a contempt proceeding should be paid into the treasury of the county where the liability to the fine was incurred, for the benefit of the school fund, and not into the treasury of the county where the fine was imposed or where it was paid or collected.

Motions relating to the disposition of a fine imposed by the supreme court. Motion of Wyandotte county allowed. Motion of Shawnee county denied. Opinion filed October 10, 1908.

*J. J Schenck,* county attorney, for Shawnee county.

*Joseph Taggart,* county attorney, for Wyandotte county.

The opinion of the court was delivered by

BURCH, J.:   In April, 1906, a judgment was ren-- dered in this court in favor of the state ousting W. W. Rose from the office of mayor of the city of Kansas. City.   Subsequently, in violation of this judgment, Rose undertook to exercise the functions of the office named, his conduct in that respect being exhibited, of course, in Wyandotte county.   He was cited for con-- tempt, and on July 6, 1906, found guilty and fined in the sum of $1000.   (*The State v. Rose*, 74 Kan. 262, 86; Pac. 296, 6 L. R. A., n. s., 843.)   The fine was imposed by the court while sitting in Shawnee county, where all its sessions are held.   The fine was collected by the clerk of this court, and was paid to him in Shawnee county.

The counties of Wyandotte and Shawnee make sepa- rate claims to the money, for the benefit of their re-- spective school funds.   The constitution contains the following provision :

"The proceeds of fines for any breach of the penal laws shall be exclusively applied in the several coun- ties in which the money is paid or fines collected, to the support of common schools." (Const., art. 6, § 6.)

Section 332 of the code of criminal procedure reads. as follows :

"All fines and penalties imposed and all forfeitures. incurred in any county shall be paid into the treasury thereof, to be applied to the support of the common. schools." (Gen. Stat. 1901, § 5770.)

The jurisdiction of this court is coextensive with the territory of the state.   Its sessions, however, must. be held in some locality within the confines of a county. The constitution requires one term each year to be held at the seat of government.   The legislature may require other terms to be held elsewhere, but it has not done so. The question is, therefore, if the accidental circum-- stance of the present transaction of all the court's busi--

ness at Topeka makes Shawnee county the beneficiary of all fines it may impose.

The words "fine," "penalty" and "forfeiture" sometimes have technical and restricted significations, and at other times overlap and run together in meaning: When one of them is used in a statute or constitution the true intent must be ascertained according to the ordinary methods of interpretation. The same is true of the words "penal laws" found in the constitutional provision quoted.

It is not necessary that fines for contempts of this court should have been specifically in the minds of the authors of either the constitution or the statute. The designation of a class includes everything properly belonging to the class. Jurisdiction to administer punishment by way of fines for contempts inheres as a common-law attribute in the grant of judicial power to the court. The law upon the subject of contempt is well defined and well understood, and its penal character can not plausibly be questioned. Indeed, proceedings in contempt, except in certain special cases, were criminal under the common law (Rapalje, Cont. 25; Oswald, Cont., Com. & Att., 2d ed., 99, 199), and this common-law quality of criminality continues to characterize them to such an extent that general provisions of the code of criminal procedure are frequently applied to them. (*The State v. Dent,* 29 Kan. 416; *In re Simms, Petitioner,* 54 Kan. 1, 4, 37 Pac. 135, 25 L. R. A. 110, 45 Am. St. Rep. 261, and cases there cited.) Therefore there can be no doubt that the money in controversy represents the proceeds of a fine, and of a fine imposed for a breach of the penal law.

The constitution does not undertake to say into what particular treasury fines for breaches of the penal laws shall go. Its purpose was to provide for the support of the common schools, and it simply restricts the use to be made of moneys paid and fines collected in any county for breaches of the penal laws to the purpose

designated. The aim of the statute was to aid and to supplement the constitution. It did this by making it a specific official duty to pay all fines and penalties duly collected into the county treasury, and included in the requirement all kinds of forfeitures. In addition to this, fines and penalties are described as imposed (by the court) and forfeitures as incurred (by the delinquent party) "in any county," and it is said that both must be paid "into the treasury thereof." But the legislature certainly did not mean to make the act of the court in one case, and the act of the party in the other, determine into what county treasury the money shall go.

The imposition of a fine or penalty necessarily presupposes forbidden conduct by the party punished, and jurisdiction of the court over the offense. In all ordinary cases of breaches of the penal laws jurisdiction will lie where the offender incurs liability to the fine or penalty the same as where an offender incurs a forfeiture. The fines, penalties and forfeitures contemplated by the statute are all pecuniary—moneys which are paid into the treasury and are placed in the school fund; and altogether they make up a single class—moneys recovered by way of some sort of punishment, and not as damages by way of compensation or reparation. No valid reason can be urged for the legislature to ignore the locality of the offense when making distribution of fines and penalties and to seize upon such locality as the determining factor of distribution in the case of forfeitures. It can scarcely be assumed that the legislature acted without reason and through mere capriciousness made this arbitrary distinction between moneys of the same class. Instead of this, it must be assumed that the same primary and fundamental consideration governed in both cases, and that the words "all fines and penalties imposed . . . in any county" (Crim. Code, § 332) have bound up in their meaning, and therefore imply, the further idea of "as a result of liability incurred therein."

The court regards this as the rational interpretation. of the statute quoted, and fines, penalties and forfeitures all alike should be paid into the treasury of the county in which the liability therefor was incurred, in the absence of other statutes indicating a different disposition. No such statute exists applying to fines imposed by this court.

Insistence upon the strict, narrow and literal meaning of the words employed in each would bring the constitution and the statute into conflict. One speaks. of the county in which the money is paid or collected; the other of the place where judgment is rendered and. the place where the cause of action accrues. The constitution being paramount, the money in controversy would go to Shawnee county, because it was paid to the clerk of the court at his office in that county. But this. interpretation would lead to the absurdity that if payment had been made in Wyandotte county, where the contemner lived, or if the money had been collected. there, that county would have been entitled to it.

It is a common practice for the legislature in the enactment of new penal statutes to make the fines imposed or penalties inflicted payable to the treasury of the county where the offense is committed, for the benefit of the school fund. It is argued that these statutes show an intention to make exceptions to the provisions of section 332 of the criminal code, quoted above, but they are so numerous as to indicate that they do no more than make spontaneous and unstudied declarations of a firmly settled policy. The same legislative understanding of the subject is disclosed in section 48 of the code of civil procedure, which reads as follows:

"Actions for the following causes must be brought in the county where the cause, or some part thereof, arose:

"First, an action for the recovery of a fine, forfeiture or penalty imposed by a statute, except that when it is imposed for an offense committed on a river or other

stream of water or road which is the boundary of two or more counties, the action may be brought in any county bordering on such river, watercourse or road, and opposite to the place where the offense was committed."

The motion of Wyandotte county for an order directing the clerk of this court to pay the fine in controversy into its treasury, for the benefit of the school fund, is allowed, with costs. The similar motion on behalf of Shawnee county is denied.