PEOPLE EX REL. PÉREZ, PLAINTIFF AND APPELLEE, *v.* MANESCAU, DEFENDANT AND APPELLANT.

## APPEAL from the District Court of Ponce in Quo Warranto Proceedings.

No. 3454.—Decided October 29, 1924.

QUO WARRANTO—WHO MAY BRING QUO WARRANTO PROCEEDINGS.—The Attorney General or any district attorney, either of his own accord or at the instance of any adult citizen of the United States or of Porto Rico who is a resident and a taxpayer, may present a petition to the district court having jurisdiction for leave to file an information in the nature of *quo warranto.*

ID.—JURISDICTION.—When a public official has committed or allowed any act which under the law involves a forfeiture of his office *quo warranto* lies and the court may inquire into the facts at first hand and without waiting until judgment is rendered convicting the officer of the offense committed or allowed. In such a case strong evidence should be required, such as is necessary to support a judgment of conviction in a criminal action.

ID.—PUBLIC OFFICE—PUBLIC TRUST.—The true essence of a free government consists in considering public office as a public trust held for the good of the country and not for the benefit of an individual or a party.

The facts are stated in the opinion.

*Messrs. Martínez Nadal, Tormes & Colón* for the appellant.

*Messrs. M. A. Muñoz, C. Llauger, J. A. Fernández, J. Tous Soto* and *J. R. Gelpí* for the appellee.

Mr. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is a quo warranto proceeding. It was brought in accordance with the law on the relation of Rogelio Pérez Haro, of age, citizen of the United States, elector, taxpayer and resident of the municipality of Ponce. *People v. Betancourt,* 28 P.R.R. 801.

The prayer was for a judgment of the court to the effect that Miguel Manescau, a member of the Municipal Assembly of Ponce, was holding the office unlawfully and should be removed. The unlawfulness consisted in that Manescau had leased a house belonging to him to the municipality of whose assembly he was a member, having simulatedly conveyed the said property to another person in order to be able to carry out the transaction.

The defendant demurred and answered, denying the execution of the alleged contract. Evidence was examined and the court rendered judgment declaring that the defendant held the office unlawfully by virtue of the facts alleged and proved and ordering that he be removed from the office.

The defendant appealed and in the transcript filed in the office of the secretary of this Supreme Court he did not include the evidence examined below. Admitting the facts alleged, he contends that they are not sufficient to authorize the proceeding or to support the judgment.

Section 2 of the Act establishing quo warranto proceedings prescribes "that in case * * * any public officer shall have done, or suffered any act which, by the provisions of the law, works a forfeiture of his office, * * * the Attorney General or any fiscal of the respective district courts, either of his own accord or at the instance of any individual relator, may present a petition to the district court of competent jurisdiction, for leave to file an information in the nature of 'quo warranto' * * *."

There is no doubt about the unlawfulness of the act of the defendant. Section 12 of the Municipal Law as amended in 1920 provides that "No member of the municipal assembly or of the council of administration or employee of the municipality shall be interested directly or indirectly in contracts entered into with the municipality." A similar provision is contained in section 202 of the Political Code. As Manescau entered into a contract with the municipality of whose assembly he was a member he acted contrary to law.

Invoking section 208 of the Political Code, the plaintiff alleges that the act done by the defendant in this case produced as a necessary consequence a vacancy in the office.

The statute cited, in so far as pertinent, reads as follows:

"An office becomes vacant on the happening of any of the following events before the expiration of the term: * * * (8) His conviction of a felony or of any offense involving moral turpitude, or a violation of his official duties."

If the defendant had been convicted of a violation of his official duties and the quo warranto proceedings had been brought on the basis of that judgment, there would be no doubt whatever as to the applicability of the statute invoked by the plaintiff.

In the absence of a clear showing to the contrary we are inclined to hold that the trial court had jurisdiction, within the quo warranto proceedings, to investigate the charge originally without waiting until a criminal action had been brought and disposed of, requiring, of course, the strong evidence which is necessary to convict in a criminal case, as we must presume that it did. See *State* v. *Donahue*, 91 Neb. 311, and the note to the same case in Ann. Cas. 1913 D, 32 *et seq.*, and *State* v. *Rose*, 86 Pac. 296, 6 L. R. A. (N. S.) 843.

That the execution by a public officer of a contract expressly prohibited by law and clearly contrary to public policy constitutes a violation of an official duty sufficient to

produce a forfeiture of the office, seems to be evident.  This is not an unconscious or unimportant violation of the law. Inasmuch as recourse was had to simulation in order to elude the mandate of the law, the deliberate intention to infringe the law was manifest.

Section 86 of the Penal Code provides:

"'Every officer who against the laws shall become interested in contracts, or becomes a vendor or purchaser at sales, or shall purchase scrip, or other evidences of indebtedness, is punishable by a fine of not more than one thousand dollars, or by imprisonment in the penitentiary not more than five years, *and is forever disqualified from holding any office.*"   (Italics volunteered.)

And jurisprudence establishes the following:

"It is also a well settled rule that a public officer can not lawfully, on behalf of the public which he represents, contract with himself personally for the performance of services, and if he renders such services and the express contract of payment is void by reason of public policy, he will not be permitted to recover on a quantum meruit.  These principles have been applied to contracts by members of municipal boards with such boards, to the effect that a member of the common council of a village cannot lawfully enter into a contract with the village for his own benefit, where the contract depends on authority derived from a vote of such council.  Such a contract is void on the ground that it is against public policy to allow a member of a board or council to place himself in a position antagonistic to his duty and obtain a contract for himself from the group of which he is a member."   22 R. C. L. 460.

See the cases of *People* v. *Bosch,* 6 P.R.R. 203, and *People* v. *Rivera,* 25 P.R.R. 569.

More than half a century ago John C. Calhoun said:

"The true essence of a free government consists in considering public office as a trust, conferred for the good of the country and not for the benefit of a certain individual or party."

The doors of the courts should be open always to permit any citizen to defend the public welfare by securing the

removal of officials who abuse the treasure with which the people have entrusted them.

The judgment appealed from must be

*Affirmed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.