**STATE of Missouri ex rel. John C. DAN-FORTH, Attorney General, Relator,**

v.

**Hon. John M. ALFORD, Clerk of the County Court of Pemiscot County, Missouri, Respondent.**

**No. 56820.**

Supreme Court of Missouri, En Banc.

Order May 4, 1971.

May 11, 1971.

Charles A. Blackmar, Asst. Atty. Gen., for John C. Danforth, Atty. Gen.

James E. Reeves, Caruthersville, for respondent.

ORDER.

Provisional rule in prohibition made absolute.

Opinion to be filed later.

HOLMAN, Judge.

Original proceeding in prohibition. The relator is John C. Danforth, Attorney General, and the respondent is John M. Alford, County Clerk of Pemiscot County. The relator seeks to prohibit respondent from placing the name of Clyde Orton on the ballot for the special election to be held on May 11, 1971, to elect a sheriff for Pemiscot County. We issued our provisional rule on April 26, 1971. Because of the time element involved the case was argued on May 3, and a decision was rendered on May 4, 1971, making our provisional rule absolute, with our opinion to be filed later.

This case should be considered in connection with our opinion and judgment in State ex inf. John C. Danforth, Attorney

General, v. Clyde Orton, Mo., 465 S.W.2d 618. In that quo warranto action, upon a finding of willful misconduct and neglect of duty, we ordered that Clyde Orton be "ousted from the office of Sheriff of Pemiscot County until the end of his present term expiring December 31, 1972." Our mandate of ouster was duly served on Clyde Orton and on Respondent Alford on April 15, 1971. The county court (in accordance with § 57.080, RSMo 1969, V.A.M.S.) made an appointment to temporarily fill the vacancy and ordered the special election heretofore mentioned to elect a successor to the office of sheriff for the remainder of the term expiring December 31, 1972. Thereafter, Clyde Orton filed a "Candidate's Declaration" and "Nominating Petition" with respondent County Clerk as a candidate for said office in the special election. It is admitted that unless prohibited by this court respondent will place the name of Clyde Orton on the ballot as a candidate for sheriff at the special election.

Relator contends that Orton is not qualified to be a candidate for the office of sheriff in the special election and that since he is ineligible prohibition should be utilized to exclude his name from the ballot. Respondent counters with the contentions that "[T]he quo warranto proceedings terminated with the ouster of Orton. The writ has been fully executed and the office is now vacant. The qualifications of public office are created by the legislature and cannot be enlarged upon or detracted from by the judicial branch. There is no statutory disqualification prohibiting an ousted official from again holding the same office. * * * The writ of ouster did not and could not annex a future disqualification. Such is beyond the power of the judicial branch;" that Clyde Orton's "statutory right to office for a term of four years arising by reason of his previous election is forfeited," but that "he stands for election to a new term created by the vacancy and stands in the position of any other citizen who runs for the new term. If

elected, his right to the office of sheriff arises by reason of the new election and not from any claim or right arising from previous office or tenure from which he was ousted." Relator answers with the contention that Orton's ineligibility to occupy the office of sheriff of Pemiscot County prior to January 1, 1973, was finally decided and adjudged in the quo warranto case and cannot be attacked collaterally in this action.

■ We agree with relator's contention that Orton's ineligibility was adjudicated in the prior case. The effect of our judgment in that case was that Orton would be disqualified or ineligible to hold the office of sheriff from the date of ouster until the end of his term expiring December 31, 1972. However, since our opinion in Orton did not contain any discussion of that question we elect to briefly discuss it here. We have found no Missouri cases that decide this question. However, there are a number of well reasoned cases from other states which hold that when an official is removed from office (as was Orton) it is for the current term and he cannot thereafter be appointed or elected to that office during the remainder of his term. See State v. Rose, 74 Kan. 262, 86 P. 296; State ex rel. Childs v. Dart, 57 Minn. 261, 59 N.W. 190; and People v. Ahearn, 196 N.Y. 221, 89 N.E. 930 [10]. Those holdings are summarized in State ex rel. Thompson v. Crump, 134 Tenn. 121, 183 S.W. 505, 507, as follows: "[I]n all these cases it was held that the particular term or tenure of the officer was a part of and included in his office, and that, when he was removed from his office, he was removed for the particular term or tenure he was then enjoying. So when one is removed from an office, he is removed for the current term, and he cannot thereafter be re-elected to that term. This is so because the term is part of the office."

In Rose, supra, the court stated that "[t]he right to exercise the functions of the office of mayor and to enjoy its privileges for the two-year term was an entity con-

ferred on the defendant, and it was that which was taken from him in the quo warranto proceeding. The resignation or the removal of an officer during his term and the election or appointment of a successor does not divide the term nor create a new and distinct one. In such a case the successor is filling out his predecessor's term; and when the defendant re-entered the office and undertook to exercise its duties he was simply serving a portion of the very term which the court had decided that he was unfit to hold. Since, under the law, he forfeited and was ousted from the right to occupy the office for the remainder of the term no subsequent election or appointment could restore to him that which he was adjudged to have forfeited and lost." 86 P. 1. c. 298. And the Minnesota court, in Dart, supra, expressed its views by saying that "the final order of removal is not made for his removal from a day or a week or a month of his term, but from the whole of the remainder of his term. Nothing less is involved in the proceedings." 59 N.W. 190.

Respondent has cited two cases which seem to express a contrary view. See Commonwealth ex rel. Feenk v. Huntsman, Ky., 237 S.W.2d 876, and State ex rel. Tyrrell v. Jersey City, 25 N.J.L. 536 (1856). To the extent that those cases express views contrary to the foregoing, we do not consider them sound and do not choose to follow them.

As indicated, the discussion above will explain our judgment in the Orton case that Mr. Orton was ousted "until the end of his present term expiring December 31, 1972."

The contention of respondent that the interpretation we have placed upon our quo warranto decision would amount to a disqualification for Orton to hold office in the future, which he says we do not have the power to do, is not sound. Our decision in that case simply defined and stated the period of time encompassed by the ouster. It was appropriate for us to do so and such was clearly within our jurisdiction.

There is also no merit in the contention that Orton is not disqualified from being a candidate in the special election because that election is for a new term created by the vacancy. We agree with the reasoning in Rose, supra, that the removal did not result in the creation of a new and distinct term but that the successor to be elected will be serving the unexpired portion of the term to which Orton was elected.

Finally, we think it should be noted that prohibition is an appropriate remedy to prevent an election official from having the name of an ineligible candidate printed on the ballot. This court so held in State ex rel. Bates v. Remmers, 325 Mo. 1175, 30 S.W.2d 609, and Mansur v. Morris, 355 Mo. 424, 196 S.W.2d 287. It is certainly in the public interest that ineligible candidates be excluded from the ballot. This for the reason that if such a candidate should receive the highest number of votes the election, in effect, would have been a nullity and the county and other candidates would be put to the expense and trouble of another election. And, even if the ineligible candidate did not receive the highest number of votes there would be the undesirable result that those who voted for him were, in effect, disfranchised.

For the reasons stated, the provisional rule, as heretofore indicated, has been made absolute.

FINCH, Acting C. J., and DONNELLY and SEILER, JJ., concur.

BARDGETT, J., concurs in separate concurring opinion filed.

HENLEY, C. J., and MORGAN, J., not participating.

BARDGETT, Judge (concurring).

I expressed my views as to the jurisdiction of this court in my dissenting opinion in State ex inf. Danforth v. Orton, Mo.,

465 S.W.2d 618, and continue to believe them to be sound. Nevertheless, I concur in the opinion of the court today because, assuming jurisdiction, the consequences of ouster are as set forth in the court's opinion in this case.