Dear Ms. Welch:
You have requested our opinion concerning the effect of the Senate's resolution expelling former Senator Larry Young. The Democratic Central Committee for District 44, you point out, needs to know "whether or not the [former] Senator can occupy the vacant seat and if they select him, can he regain his seat until the next election?"
Our opinion is as follows: In light of the wording of the Senate's expulsion resolution, former Senator Young is legally unqualified to serve in this seat until the next election.[1]
 I Analysis
On January 16, 1998, the Senate approved a resolution expelling Senator Young "for the remainder of the current 4-year term." As evidenced by both the language of the resolution and its explanation on the floor, the Senate intended the resolution to be a disqualification, barring former Senator Young from returning this year to the Senate pursuant to nomination and appointment under Article III, § 13 of the Maryland Constitution.[2]
The Senate acted pursuant to Article III, § 19 of the Constitution, which empowers it to "be the judge of the qualifications . . . of its members . . . [and to] expel a member. . . ."[3] The Senate's power to include this disqualification in an expulsion resolution reflects the traditional power of a parliamentary body. Under the English common law as of 1776, the English Parliament could exclude a member for the duration of the Parliament from which he had been expelled. SeePowell v. McCormack, 395 U.S. 486, 524-27 (1969). This aspect of the English common law as it prevailed in 1776, unless revised, continues to be Maryland law. See Article V of the Declaration of Rights. Therefore, the Senate expulsion resolution could, and did, expel Senator Young for the remainder of his unexpired term.[4]
This interpretation of the Senate's power is also consistent with the prevailing case law in other jurisdictions. For example, in Gelch v. State Board of Elections, 482 A.2d 1904 (R.I. 1984), Rhode Island's highest court surveyed decisions from Kansas, Minnesota, Tennessee, and New York and noted that:
 In these cases, . . . certain officials who were removed from office or declared ineligible for office during the terms to which they had been elected or appointed sought to fill the unexpired portions of their terms. All of these cases hold that the full term or tenure of the officer was a part of and included in the office and that when removed from office, the incumbent was removed for the full term or tenure then being served.
482 A.2d at 1212. The Rhode Island court concluded that a removed mayor "was not legally qualified to be a candidate to fill the vacancy in the office . . . for the unexpired term."482 A.2d at 1217.[5]
Because Senate adoption of the January 16 expulsion resolution creates a disqualification with respect to former Senator Young's ability to serve as his own successor for the reminder of his unexpired term, the Central Committee's nomination of former Senator Young to fill the vacancy would be a nullity. That is, the Governor would have a duty to decline to appoint him to fill the vacancy.
To be sure, under Article III, § 13, the Governor is usually bound to appoint the person selected by the Central Committee.See 62 Opinions of the Attorney General 241, 244 (1977). This mandate, however, must be construed as an obligation to appoint a person "otherwise properly qualified to hold the office." See
Article III, § 13(a). For example, the Governor could not ratify the Central Committee's nomination of an underaged person or one refusing to relinquish a second office.[6]
 II Conclusion
Because former Senator Young is disqualified from serving the remainder of his unexpired term in the Senate, the Governor may not appoint him to fill this vacancy, and the Central Committee's nomination of him would be legally ineffective.[7]
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
 Robert A. Zarnoch Assistant Attorney General Counsel to the General Assembly
[1] This conclusion was originally provided in a letter of advice. Because of the importance of the matter, we are reissuing the letter, with minor stylistic changes, as a formal opinion.
[2] On January 15, 1998, the Senate President read on the floor and distributed to Senators a document called Questions andAnswers on the Discipline of State Legislators, prepared by the Attorney General's Office. Included in this document was the following:
 Q. If Senator Young is expelled, why couldn't he be seated as his SUCCESSOR if nominated by the district central committee and appointed by the Governor?
 A. Because the resolution would expel him for the remainder of his four-year elected term.
Because the Senate's power to exclude a member, i.e. refuse to seat him, is keyed to an absence of qualification by the legislator, it is clear that the resolution was viewed as a disqualification for the remainder of the term.
[3] Section 19 provides as follows:
 Each House shall be judge of the qualifications and elections of its members, as prescribed by the Constitution and Laws of the State, and shall appoint its own officers, determine the rules of its own proceedings, punish a member for disorderly or disrespectful behavior and with the consent of two-thirds of its whole number of members elected, expel a member; but no member shall be expelled a second time for the same offense.
[4] English common law later changed to prevent exclusion of expelled members who were subsequently reelected. See Powellv. McCormack, 395 U.S. at 527-29; Letter of Advice to Delegate Robert L. Flanagan from Assistant Attorney General Richard E. Israel (January 19, 1998). Moreover, the 1776 Maryland Constitution and later Constitutions prohibited two expulsions for the same offense. These developments, however, did not appear to alter the power of a house of the General Assembly to expel a member for the remainder of his or her term. As Mr. Israel pointed out in his letter of advice to Delegate Flanagan, for more than 150 years, the language of what is now Article III, § 13 only authorized the filling of a General Assembly vacancy for the remainder of a term with "another person," not the person expelled.
[5] In Coleman v. Rose, 86 P. 296, 298 (Kan. 1906), a Kansas court said that:
 The resignation or the removal of an officer during his term and the election or appointment of a successor do not divide the term nor create a new and distinct one. In such a case the successor is filling out his predecessor's term; and when the defendant reentered the office and undertook to exercise its duties he was simply serving a portion of the very term which the court had decided that he was unfit to hold. Since under the law he forfeited and was ousted from the right to occupy the office for the remainder of the term, no subsequent election or appointment could restore to him that which he was adjudged to have forfeited and lost. The electors of the city are as much bound by the law and the judgment rendered in pursuance of the law as their representatives and officers, and the special election did not warrant the defendant in ignoring or violating the judgment rendered under the law.
[6] That the Governor is prohibited from appointing an unqualified nominee to a General Assembly vacancy does not infringe on the Legislature's constitutional power to judge the qualifications of its members. As construed by the Court of Appeals, Article III, § 19 makes the General Assembly the "ultimate," not sole, judge of the qualifications of a member, as long as no principle of separation of powers is transgressed. SeeLamb v. Hammond, 308 Md. 286, 297, 518 A.2d 1057 (1987).
[7] If former Senator Young were appointed to a House vacancy, the situation would be vastly different. Because he is not disqualified from serving in this body, the Governor would be obligated to approve the Central Committee's nomination. Of course, the House could still expel him for the same offenses considered by the Senate.
 *Page 114