STATE of Missouri, ex rel. Jeremiah W. NIXON, Attorney General of the State of Missouri, Respondent,

v.

Michael WAKEMAN, Appellant.

No. WD 69271.

Missouri Court of Appeals, Western District.

Oct. 28, 2008.

Application for Transfer to Supreme Court Denied Dec. 23, 2008.

Karl H. Timmerman, Holden, MO, for Appellant.

Michael W. Bradley, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, C.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Chief Judge.

Michael Wakeman appeals the circuit court's judgment granting the State's petition for a *quo warranto* to remove him as mayor of Holden, Missouri. We affirm.

## Factual and Procedural Background

The parties stipulated to the following facts. Mr. Wakeman was appointed mayor of Holden, Missouri, to serve a four-year term. At the beginning of his term, he appointed his brother-in-law, Larry Miller, to replace him as the chief firefighter. Upon discovering that this appointment violated the anti-nepotism clause of the Missouri Constitution,[1] he requested Mr. Miller's resignation. Mr. Miller resigned and the city council accepted his resignation. Subsequently, a complaint was filed with the Missouri Ethics Commission (Commission) concerning Mr. Wakeman's appointment of his brother-in-

law. The Attorney General notified Mr. Wakeman in writing that it would file a petition for *quo warranto* to remove him from office if he did not immediately resign. Consequently, Mr. Wakeman resigned. The city council initially refused but then accepted his resignation. Thereafter, the city council unanimously voted to appoint Mr. Wakeman as mayor to serve the remainder of the term.

The Missouri Attorney General's Office filed a *quo warranto* petition to remove him from office, alleging Mr. Wakeman was precluded from serving the remainder of his term because he forfeited his office when he violated the anti-nepotism clause. The circuit court agreed and granted the petition for *quo warranto*. Mr. Wakeman appeals.

## Standard of Review

 We review judge-tried cases pursuant to the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, we will affirm unless the decision is not supported by the evidence, is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Id.* Nevertheless, all questions of law, as here, are reviewed *de novo*. *Junior Coll. Dist. v. City of St. Louis*, 149 S.W.3d 442, 446 (Mo. banc 2004) (indicating only a question of law is at issue when a trial court tries a case on stipulated facts.).

## Legal Analysis

 Mr. Wakeman argues that the trial court misapplied the law by entering judgment granting a *quo warranto* and finding him ineligible to finish his appoint-

---

1. Article VII, section 6 of the Missouri Constitution provides:

 Any public officer or employee in this state who by virtue of his office or employment names or appoints to public office or employment any relative within the fourth degree, by consanguinity or affinity, shall thereby forfeit his office or employment.

ed term as mayor because "a resignation following an act constituting a forfeiture is not a valid basis to support a *quo warranto* action because after [the forfeiture], he resigned from the office and then was appointed mayor by the city council." A *quo warranto* is properly granted where a person remains in office after engaging in conduct that constitutes forfeiture. *State v. Shull,* 887 S.W.2d 397, 401 (Mo. banc 1994), *overruled on other grounds by State v. Olvera,* 969 S.W.2d 715, 716 n. 1 (Mo. banc 1998).

Mr. Wakeman states that he cured the forfeiture by rescinding the appointment before a complaint was filed or judicial action was taken. Because the constitutional provision does not exempt those officials who promptly rescind the appointment, we reject Mr. Wakeman's invitation to create such an exception. *See Shull,* 887 S.W.2d at 400 (stating the anti-nepotism provision does not afford the violator any excuses). Mr. Wakeman forfeited his office when he violated the anti-nepotism clause. *See id.*

■ Contrary to Mr. Wakeman's belief, a judicial determination of unfitness is not required to bar him from office. An office holder has a right to "exercise the functions of [the office] and to receive remuneration during the term of the office." *Id.* at 401. An ouster judgment or *quo warranto* serves to divest the office holder of that right, so a judicial determination as to the forfeiture—violating the anti-nepotism clause—is a necessary due process prerequisite before divestment. *Id.* at 402. However, resignation of the office, as in Mr. Wakeman's case, dissipates the need for due process because that person voluntarily relinquishes the right to the office, thereby conceding that his or her actions amounted to a forfeiture. *See id.* Consequently, a judicial determination declaring Mr. Wakeman forfeited his office was not

needed before this forfeiture could be the basis for barring him from serving the remainder of his term.

■ Mr. Wakeman also argues that forfeiture and resignation are different from ouster or removal so that the general rule preventing a removed officer from serving the remainder of his or her term does not apply to him. An officer removed from the office cannot serve the remainder of the term as his or her own successor. *State ex rel. Hall v. Wolf,* 710 S.W.2d 302, 306 (Mo.App. E.D.1986). Mr. Wakeman's argument that the above rule does not apply to him because he resigned is inaccurate.

■ "The resignation or the removal of an officer during his term and the election or appointment of a successor does not divide the term nor create a new and distinct one." *State ex rel. Danforth v. Alford,* 467 S.W.2d 55, 57 (Mo. banc 1971). The "office" that an individual forfeits by violating article VII, section 6, includes the entire designated term, four years in this case, for which the officer was entitled to serve. *See id.; Wolf,* 710 S.W.2d at 306. The forfeiture of the office effected via resignation or removal precludes that person from serving in that office for the remainder of the term. *See Alford,* 467 S.W.2d at 57. Hence, the fact that Mr. Wakeman resigned from office rather than being ousted from office is a distinction without a difference. The constitution required the forfeiture of the office because of Mr. Wakeman's conduct. Mr. Wakeman serving as his own successor would allow him to serve a portion of the term he forfeited, which is in contravention to the anti-nepotism provision.

We understand the hardship that the anti-nepotism clause imposes upon leaders of small municipalities. We also commend Mr. Wakeman in his efforts to cure the

violation without judicial intervention. However, the constitution does not provide any exceptions to the penalty for nepotism, and we are without authority to amend it. The circuit court properly granted the petition for *quo warranto* and removed Mr. Wakeman from the office of mayor. Affirmed.

VICTOR C. HOWARD and ALOK AHUJA, JJ. concur.