(70 Misc. Rep. 8.)

### In re PHILLIPS.

(Supreme Court, Special Term, Queens County. December, 1910.)

1. WITNESSES (§ 293½*)—CONSTITUTIONAL PRIVILEGES—POWER OF COURT TO PROTECT—INVESTIGATION BEFORE COMMISSIONER.

   While the removal of a borough president in the city of New York is an executive act, such attribute does not extend to the investigation itself, at least in so far as to strip from the courts the power to protect witnesses against an invasion of their constitutional privileges affecting their liberties, whether the investigation be by the Governor himself, or by his commissioner of investigation.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1011; Dec. Dig. § 293½.*]

2. OFFICERS (§ 72*)—INVESTIGATION—PROCEEDINGS—REVIEW.

   Where proceedings to investigate charges against an officer are instituted under Public Officers Law (Consol. Laws, c. 47), § 34, providing that the Governor may direct the evidence to be taken before a commissioner appointed by him, who may issue subpœnas for such witnesses as may be requested by the officer proceeded against and may require witnesses to attend before him, both the jurisdiction of the commissioner and the exercise of an excess of power by him are subject to court review.

   [Ed. Note.—For other cases, see Officers, Cent. Dig. § 105; Dec. Dig. § 72.*]

3. WITNESSES (§ 21*)—PUNISHMENT OF WITNESS.

While the commissioner cannot punish a recalcitrant witness, the judge of a court of record may do so under Code Civ. Proc. §§ 854–856, giving a person authorized to try or determine a matter in an official capacity in the relation of which proofs may be taken the right to subpœna witnesses who must attend, and providing that, if such a witness refuses to attend, a judge of a court of record may commit him to jail until he submits to examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 37–41; Dec. Dig. § 21.*]

4. WITNESSES (§ 307*)—SUBPŒNA—SETTING ASIDE—GROUNDS.

Where under the Governor's authority two concurrent investigations are being made, one by the grand jury and the other by the Governor's commissioner, covering the same general subjects, and where the same persons as to certain matters are material witnesses in both investigations, and a witness was subpœnaed who appeared before the investigation by the Governor's commissioner to testify respecting matters charged in indictments found against him by the grand jury, the subpœna may be vacated on motion, and the witness need not first be sworn and then claim his constitutional privilege against self-incrimination, in answer to a question material to the inquiry.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1061–1064; Dec. Dig. § 307.*]

Application of John M. Phillips to vacate an alleged subpœna purporting to have been issued by Samuel H. Ordway, Commissioner, and purporting to require applicant to attend before such Commissioner to testify in an alleged proceeding pending before Ordway, as Commissioner appointed by the Governor to take evidence as to the truth of charges filed with the Governor by Arthur Keeting and others against Lawrence Gresser, President of the Borough of Queens. Motion granted.

Eugene N. L. Young, for the motion.
Samuel H. Ordway and Charles Pope Caldwell, opposed.

KAPPER, J.. So much of the facts relating to this case as appears to me to be necessary to a clear understanding of the point involved on this motion is as follows:

Charges against Lawrence Gresser, borough president of the borough of Queens, were lodged with the Governor, who thereupon, on September 21, 1910, appointed Samuel H. Ordway, Esq., as commissioner to investigate such charges and to report the evidence taken, the findings made, and the conclusions reached by him to the Governor. The charges were contained in two separate sets, one of which was signed by Charles Brodek and others, and the other by Charles Pope Caldwell and others. Mr. Ordway, as such commissioner, commenced his hearings on October 6, 1910. On October 4, 1910, there was presented to the justice of this court presiding at the Trial Term a designation by the Governor of the Attorney General to attend the term and to prosecute before or submit to the grand jury any criminal charges "against any person or persons growing out of or based upon any violation or alleged violation of law, arising through or from the transactions in Queens county of any person connected with the borough or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

county of Queens, or the city of New York, or with the officers or employés of any of them." Said justice, upon such presentation, specifically charged the grand jury to inquire into the matters so designated by the Governor. On November 22, 1910, nine indictments were returned by said grand jury against John M. Phillips, the petitioner herein, five of them accusing him jointly with one Patrick E. Leahey of the crime of grand larceny, two of them accusing him separately of the crimes of grand larceny and forgery, and the remaining two accusing him jointly with one Joseph F. Phillips of the crime of grand larceny.

On December 7, 1910, a subpœna was served upon the petitioner requiring him to testify before Mr. Ordway, as commissioner, but the petitioner, although in attendance, refused to be sworn. Proceedings to punish him for such refusal were thereupon instituted by said commissioner before the county judge of Queens county, upon an affidavit of the above-named Charles Pope Caldwell, one of the complainants before the Governor against the borough president, and who is entitled in said affidavit as counsel for the petitioners in the proceedings before the commissioner. That motion coming on before the county judge on December 10, 1910, was adjourned to December 13, 1910. Immediately following the adjournment, the petitioner, as he was leaving the courthouse, was served with another subpœna, the subject of this motion, which called upon him to appear and attend before said commissioner at 2 o'clock that day (the tenth) to "testify and give evidence" in the proceedings before said commissioner. This subpœna recites the appointment of Mr. Ordway by the Governor, to take evidence of the charges filed by Charles Pope Caldwell and others as petitioners, and commands the attendance of John M. Phillips, the petitioner herein, to there testify "on the part of the petitioner." The subpœna is signed "Samuel H. Ordway, Commissioner," and "Charles Pope Caldwell, Atty."

The petitioner in moving to vacate said subpœna says in his petition that:

"The service of said alleged subpœna is an attempt to compel this petitioner when acting as a witness in said investigation to give evidence which may tend to imperil his constitutional privileges as a defendant under criminal indictments."

The question before me is new, so far as the brief time at my command for research has permitted an examination for precedents, yet novelty in my opinion is not the sole merit of the application. As on the argument, I am still impressed, in view of the circumstances existing here, with the gravity and possibly appalling consequences to one under indictment if the action of the commissioner is to be upheld.

At the outset of the argument, it was contended on behalf of the Governor's commissioner that his investigation was not a judicial but an executive act; and hence the court was powerless to interpose between the subpœna and the proposed witness. Undoubtedly the removal of a borough president in the city of New York is an executive act. People v. Ahearn, 131 App. Div. 30, 115 N. Y. Supp. 664, affirmed, 196 N. Y. 221, 89 N. E. 930, 26 L. R. A. (N. S.) 1153. But this does not

extend to the investigation itself, at least, so far as to strip from the courts the power to protect witnesses against an invasion of their constitutional privileges affecting their liberties; and this is so whether the investigation be by the Governor himself or by his commissioner of investigation. Public Officers Law (Consol. Laws, c. 47) § 34, is the authority under which the commissioner acts, and its provision that in the taking of evidence the commissioner may require witnesses to attend before him undoubtedly empowers the courts to review either the jurisdiction of the commissioner or an excess of power. While no authority is given to the commissioner to punish a recalcitrant witness, the remedy is found in sections 854–856 of the Code of Civil Procedure, the provisions of which, in brief, are that, if a witness refuses to be examined, a judge of a court of record may commit the offender to jail until he does submit to examination. It was under these provisions that both the commissioner and Mr. Caldwell, who appears to be acting as prosecutor before the commissioner for those who made the charges against the borough president, moved before the county judge to punish the petitioner.

The judicial power over the commissioner's investigation is ample to protect proposed witnesses, not alone against an abuse of process, but against a violation of their rights under the Constitution as well, the most important of which is that they shall not be compelled in any criminal case to give evidence against themselves. This power is not now denied by the commissioner who, in an affidavit filed in opposition to this motion, states that the petitioner's "constitutional rights and privileges will always be respected before me as commissioner." But his contention is, as he also says in this affidavit, that the petitioner must be sworn, after which "he could refuse to answer any questions on the ground that they would tend to incriminate and degrade him."

The petitioner, on the other hand, avers that the commissioner's investigation covers the same general subject and under the same authority, to wit, the Governor, as did the inquiry by the grand jury which resulted in the finding of the nine indictments against him, and that the subpœna to attend before the commissioner is for the purpose of compelling him to disclose his explanations and defense to the said indictments in advance of his trial; and he contends that, inasmuch as he is now under indictment to answer with respect to matters that are the subject of the investigation before the commissioner, a requirement that he obey the subpœna in question will compel him to be a witness against his will and violate his right as a defendant under indictment to stand mute upon the trial thereof, unless he chooses to become a witness on such trial.

Do the moving papers support the averments and contention of the petitioner?

It is alleged by him, and is not denied by the commissioner, that, in the proceedings before the grand jury which resulted in the above indictments, the witnesses were summoned on subpœnas entitled "In the Matter of the Investigation in the Borough of Queens Ordered by the Governor of the State of New York."

In the affidavit filed by the commissioner in opposition to this motion, he admits:

"That both the investigation being conducted by me and the investigation being conducted by the grand jury of Queens county cover to some extent the same ground, and that in some cases the same persons are material witnesses upon both investigations."

The petitioner further says that the service of the subpœna in question is "for the sole purpose of aiding and abetting the Attorney General in charge of Queens county who has charge of the indictments against this petitioner, by endeavoring to compel this petitioner to disclose his explanations and defense to the said indictments in advance of the trial of said indictments; and the ground of deponent's knowledge in making this statement is the fact that the said Charles Pope Caldwell stated to the petitioner's attorney, Eugene N. L. Young, and in petitioner's hearing, that it was his purpose to question and interrogate this respondent upon his appearance as a witness before the said Samuel H. Ordway, respecting the facts and matters charged in indictments numbered as above and commonly referred to as the Culvert cases."

While the commissioner's affidavit denies it to be the purpose of his subpœna to aid and abet the Attorney General as alleged by the petitioner, it is exceedingly significant to my mind that there is no denial whatever, either by the commissioner or Mr. Caldwell, of the statement alleged by the petitioner to have been made by Mr. Caldwell to petitioner's attorney that the purpose of subpœnaing petitioner before the commissioner was to question and interrogate him respecting the facts and matters charged in the indictments already found against him.

The petitioner further says that it is also the purpose to interrogate him before the commissioner with respect to a conversation claimed to have been participated in by him with Patrick E. Leahey, who is indicted jointly with him, "and which relates directly to the subject-matter of said indictments." The petitioner says that his belief as to this averment is a statement contained in the affidavit of Charles Pope Caldwell filed with the county judge of Queens county in the punishment proceedings above referred to. The said affidavit of Mr. Caldwell before the county judge is attached to the moving papers and is made a part thereof. And that affidavit does assert that one of the matters which "are involved in the charges referred to and are necessary and material to the inquiry" is the subject of a conversation said to have been already testified to before the commissioner by said Patrick E. Leahey, who is described in Mr. Caldwell's affidavit as "ex-superintendent of highways in the borough of Queens," and which conversation is alleged by Mr. Caldwell to have taken place in the presence of the said John M. Phillips, this petitioner.

The only answer made to the claim of the petitioner as to the purposes of the inquiry to be made of him by the commissioner is that contained in the affidavit of the commissioner filed on this motion (no other papers being filed in opposition) and which nowhere denies a single one of the petitioner's claims, with the exception already noted

and above quoted, namely, that the purpose of subpœnaing petitioner was not to aid the Attorney General.

Enough has been shown, I think, to lead any fair mind to the conclusion that the petitioner's apprehensions are well founded, and that he is actually in peril if required to obey the subpœna in question. The moving papers establish that two simultaneous and concurrent investigations are being conducted in Queens county under the authority of the Governor, one by the grand jury and the other by the Governor's commissioner, covering, as the commissioner said in his affidavit, "to some extent," but to my mind to the fullest extent, the same ground; and that (again quoting the language of the commissioner in his affidavit) "in some cases the same persons are material witnesses upon both investigations." It is the further fact that out of the investigations thus far conducted by the grand jury this petitioner has had returned against him nine indictments for felony. I am also satisfied from the papers before me that the commissioner and Mr. Caldwell, who is acting in the nature of a prosecutor before the commissioner, seek the presence of the petitioner for the purpose of interrogating him upon matters for which he has been indicted. In this connection a reference again to the affidavit of Mr. Caldwell before the county judge in the punishment proceedings is pertinent. He says that:

"The said John M. Phillips refused to take an oath as a witness, although duly ordered to take said oath by the commissioner, stating as his grounds that he did not refuse on the ground that it might incriminate or degrade him, but that it might discriminate against him upon his trial, he then being under certain indictments for various crimes."

What more natural thing than that this petitioner should endeavor to have the world understand that he is not guilty and that his refusal to speak now is a privilege and a right guaranteed to him by the fundamental laws of the land? Must he be sworn, and then, in answer to a question material to the inquiry, take refuge behind the claim that his answer may tend to incriminate and degrade him, when in the same breath he asserts that he is in no wise incriminated and that he is innocent of all criminal charges against him?

A witness summoned before the grand jury may well be sworn and then take refuge behind a refusal to answer upon the ground that it would tend to incriminate him, and the world is none the wiser for the grand jury proceedings are secret. But here, with no secrecy, and with no immunity or indemnity whatever, the witness is compelled to brand himself or disclose matters which may and can be used against him on the trial of his indictments.

A public investigation which furnishes no immunity or indemnity against self-incriminatory testimony ought to be so conducted as not to violate, even indirectly, the constitutional guaranty that no person shall be compelled in any criminal case to be a witness against himself. In such cases nothing short of absolute immunity from prosecution can take the place of the privilege by which the law affords protection to the witness. People ex rel. Taylor v. Forbes, 143 N. Y. 219, 229, 38 N. E. 303.

On the argument it was frankly conceded by the commissioner that whatever the petitioner might testify to could be used against him on the trial of his indictments, unless he chose to rely on his privilege and refuse to answer on the ground that it would incriminate or degrade him. To my mind these alternatives are each of them downright cruelties, and, if not positively indecent, they savor of an age long past and forgotten. This petitioner, proclaiming his innocence, must go to the rack; and piece by piece this and that fact and circumstance must be disclosed, each apparently innocent and harmless in itself, but which, when taken together and in conjunction with other matters, may lead to a conclusion of guilt where without his own disclosures no argument whatever would hold against him. Either that, or the people among whom he has lived and borne a good character must be publicly told that so far from being innocent of wrongdoing he is secreting wrong and crime under a refusal to answer where a disclosure would incriminate him.

The effect of such a situation upon his neighbors, who would ordinarily have testified to his good character, is so manifest as not to require elaboration; in fact, it appears to me positively fatal to a defense of good character which, in criminal cases, may of itself create a reasonable doubt.

Chief Justice Marshall (1 Burr's Trial, 245), in speaking of the extent of the immunity which a witness may lawfully claim, said:

"Many links frequently compose that chain of testimony which is necessary to convict an individual of a crime. It appears to the court to be the true sense of the rule that no witness is compelled to furnish any one of them against himself. It is certainly not only a possible but a probable case, that a witness by disclosing a single fact may complete the testimony against himself and to a very effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself would be unavailing, but all other facts without it would be insufficient. While that remains concealed in his own bosom, he is safe; but draw it from thence and he is exposed to a prosecution. The rule that declares that no man is compellable to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description."

In Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, the claim of privilege before the grand jury was involved, and, in sustaining the privilege contended for in behalf of the witness, the Supreme Court of the United States held that the object of the constitutional provision was to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime, and that its meaning was that a witness is protected from any compulsory disclosures of the circumstances of his offense, or the source from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him.

In the Taylor Case, supra, Judge O'Brien, speaking of the constitutional and statutory provisions which provide that no person "shall be compelled, in any criminal case, to be a witness against himself,"

said (at page 227 of 143 N. Y., at page 305 of 38 N. E.), that these provisions "have long been regarded as safeguards of civil liberty, quite as sacred and important as the privileges of the writ of habeas corpus or any of the other fundamental guaranties for the protection of personal rights." And he adds:

"When a proper case arises, they should be applied in a broad and liberal spirit in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which they are expressed. The security which they afford to all citizens against the zeal of the public prosecutor, or public clamor for the punishment of crime, should not be impaired by any narrow or technical views in their application to such a state of facts as appears from the record before us. The right of a witness to claim the benefit of these provisions has frequently been the subject of adjudication in both the federal and state courts. The principle established by these decisions is that no one shall be compelled in any judicial or other proceeding against himself, or upon the trial of issues between others, to disclose facts or circumstances that can be used against him as admissions tending to prove his guilt .or connection with any criminal offense of which he may then or thereafter be charged, or the sources from which or the means by which evidence of its commission or of his connection with it may be obtained."

In the case last cited the relator first answered questions before the grand jury which denied, in general terms, authorship of the offense under investigation; in other words, his innocence of any connection therewith. Thereupon questions were put to him with a view of ascertaining who the person or persons were that did certain acts which formed the basis of the commission of the crime; and these questions were framed in various forms and sometimes repeated, to which the witness stated to the grand jury that he declined to give the evidence on the ground that the answer might tend to incriminate him. He was adjudged guilty of contempt, which adjudication the Court of Appeals reversed; and the reasons given by the learned judge who wrote for the Court of Appeals as to why the relator should not be compelled to answer these questions relating to the other persons and their acts, even after he himself had declared his own innocence, appear to my mind conclusive of the right of the petitioner to prevail before me on this motion.

Judge O'Brien said (pages 229–231 of 143 N. Y., page 306 of 38 N. E.):

"The testimony which the relator voluntarily gave before the grand jury, in general terms exonerating himself from all connection with the transaction, seems to have had great weight with the learned trial judge. It was argued that the relator could not possibly be put in peril by his answer to the question, since he had already testified that he had no connection with the transaction. But this conclusion was not warranted by the facts. The testimony of the witness might be ever so strong and clear in favor of his .innocence, but it did not conclude the public prosecutor, in the absence of some constitutional or statutory provision securing the relator from prosecution. The general statements of a person charged with crime in regard to his innocence avail but little against incriminating facts and circumstances. His protestations of innocence and his broad general denial of any knowledge of or connection with the transaction might be overcome by facts and circumstances, if the district attorney could be permitted to draw them from the witness. Any one who has had much experience in the conduct of criminal trials is aware of the fact that, frequently, the most dangerous

proof that a person charged with crime has to meet are his own statements made for the purpose of warding off suspicion or of satisfying others with regard to his innocence. It is not unusual on such trials to confront the accused with his own declarations made for the very purpose of exonerating himself from all suspicion, but which, when all the evidence is collected, are so far at war with all the facts and circumstances as to furnish evidence of guilt. The witness, by answering the general questions as to his connection with the affair, whether his answers were true or false, did not waive his right to remain silent when it was sought to draw from him some fact or circumstance which in his judgment might form another link in the chain of facts and capable of being used under any circumstances to his detriment or peril. The circumstances relating to the purchase of the jugs and the means employed to place them under the banquet room were important as furnishing a clue that might lead to the identification of the guilty person or persons, and the witness was or appeared to be so related to the transaction that he might lawfully refuse to furnish the same, notwithstanding his general statements to the effect that he had nothing whatever to do with them. The witness who knows what the court does not know, and what he cannot disclose without accusing himself, must in some cases judge for himself as to the effect of his answer, and if, to his mind, it may constitute a link in the chain of testimony, sufficient to convict him, when other facts are shown, or to put him in jeopardy, or subject him to the hazard of a criminal charge, indictment, or trial, he may remain silent. While the guilty may use the privilege as a shield, it may be the main protection of the innocent, since it is quite conceivable that a person may be placed in such circumstances, connected with the commission of a criminal offense, that if required to disclose other facts within his knowledge he might, though innocent, be looked upon as the guilty party."

Having reached the conclusion that to subject the petitioner to the inquiry of the Governor's commissioner would, under the circumstances of this case, imperil his right to stand mute as to all matters affecting or in anywise connected with the subject of the investigation which resulted in his indictments, it would seem to follow that there is nothing that can be asked of the petitioner on the inquiry by the Governor's commissioner after he is sworn, and that at that point the petitioner would have the right to remain silent, and that for his silence he cannot be punished. The subpœna, under those circumstances, is an idle formality, and its issuance ought to be nullified.

In Matter of Attorney General, 21 Misc. Rep. 101, 47 N. Y. Supp. 20, Mr. Justice Chester had before him an application to vacate an order of examination before a referee under the anti-monopoly act (Laws 1897, c. 383), and he held that, as the act contained no immunity from prosecution of the witness for the crime which was sought to be discovered by the examination, the order should be vacated, and that such constitutional objection may properly be raised by the persons sought to be examined upon a motion made by them to vacate an ex parte order granted for their examination. He further held that it is not necessary that the interposition of the objection should be postponed until the examination has been begun and a question has been asked the witness which might tend to criminate him. While the affirmance by the Appellate Division of the order vacating the ex parte order (22 App. Div. 285, 47 N. Y. Supp. 883) was placed upon grounds different from those assigned by the learned justice at Special Term in support of his order, yet the Special Term does not appear to have been overruled on the foregoing rulings.

In Matter of Foster, 139 App. Div. 769, 779, 780, 124 N. Y. Supp. 667, 675, a subpœna duces tecum issued by the commissioner of accounts of the city of New York was vacated by the Special Term; and, in an opinion of affirmance, Mr. Justice Burr, writing for an unanimous court, said:

"A more troublesome question arises as to the regularity of the practice adopted by Foster in making the motion to set aside the subpœna. The practice usually followed in such cases seems to have been to disobey the subpœna and await the institution of proceedings to punish for contempt. But in this case the witness subpœnaed is Holt, while the real party to the proceeding is not the witness Holt, but Foster, whose rights are being invaded. In view of the fact that, if a subpœna is ever to become effective, it is by virtue of the provisions of the Code of Civil Procedure, which contemplated a judicial proceeding to punish for contempt if it was disobeyed, we think that a party whose rights are invaded by such process may apply to the court, whose duty it is to enforce it, to set aside such process if it is invalid."

The language of the case last cited applies to the case at bar in which the subpœna now sought to be set aside could not become effective except by virtue of the provisions of the Code of Civil Procedure providing for a proceeding to punish for contempt in case of disobedience; and the petitioner, whose constitutional rights would appear to me to be clearly invaded if required to answer at all to any question that the Governor's commissioner may put to him material to his investigation, has made a proper application to the court, whose duty it would ordinarily be to enforce the subpœna, to set the same aside.

The commissioner has argued that, unless he is permitted to examine the petitioner under oath, the Governor's investigation will be halted. If true, that is less deplorable than a disregard of the constitutional safeguards upon which depend the liberty of person and the security of personal rights.

Motion granted.