## PEOPLE v. AHEARN.

(Supreme Court, Appellate Division, First Department.   March 5, 1909.)

1. MUNICIPAL CORPORATIONS (§ 155*) — OFFICERS — REMOVAL BY GOVERNOR — NATURE OF POWER.

Greater New York Charter 1906, p. 227, § 302, provides that a borough president may be removed in the same manner as the mayor, who under section 122 is removable by the Governor in the same manner as a sheriff, whom Const. art. 10, § 1, provides the Governor may remove within the term for which he has been elected, giving to him a copy of the charges against him, and an opportunity of being heard in his defense. *Held* that, though a removal by the Governor is an executive act and therefore not reviewable by the courts, it cannot be performed arbitrarily, but there must be charges against the officer, such as, if proved, and not successfully met by way of defense, will indicate his unfitness to hold the office.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 345; Dec. Dig. § 155.*]

2. OFFICERS (§ 71*)—REMOVAL BY GOVERNOR—PRESUMPTION.

The Constitution having confided to the Governor the sole power to determine whether charges against the officer are sufficient to warrant removal, and have been proved, it must be assumed that he will exercise the duty honestly and lawfully; and, when he has exercised the power of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

removal, his act is a final and conclusive determination that the removed officer is unfit.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 99; Dec. Dig. § 71.*]

3. MUNICIPAL CORPORATIONS (§ 129*)—OFFICERS—"APPOINTMENT."

Where a borough president of the city of New York has been removed by the Governor, and the board of aldermen vote to reinstall him in office under Greater New York Charter 1906, p. 227, § 302, providing that a vacancy in the office of borough president is to be filled for the unexpired term by a majority vote of all the members of the board of aldermen then in office representing the borough, their act, though termed an "election" by the charter, is an appointment within Const. art. 10, § 2, providing that all city officers whose election or appointment is not provided for by the Constitution shall be elected by the electors of the city or some division thereof, or appointed by such authorities thereof as the Legislature shall designate.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 303; Dec. Dig. § 129.*

For other definitions, see Words and Phrases, vol. 1, pp. 458-461.]

4. OFFICERS (§ 1*)—NATURE OF "PUBLIC OFFICE."

A public office embraces more than the right to physically occupy a specified room, exercise certain powers, and receive a prescribed emolument. It means the right to exercise generally and in all proper cases the functions of a public trust or employment, to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 6, pp. 4921-4931; vol. 8, p. 7736.]

5. MUNICIPAL CORPORATIONS (§ 8*)—GREATER NEW YORK CHARTER—CONSTRUCTION—INTENT OF LEGISLATURE.

In construing the Greater New York charter, a construction should be adopted that will give effect to the purpose of the Legislature, and obviate the anticipated evils which were sought to be guarded against.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 14; Dec. Dig. § 8.*]

6. MUNICIPAL CORPORATIONS (§ 160*)—OFFICERS—REMOVAL BY GOVERNOR—EFFECT.

Greater New York Charter 1906, p. 227, § 302, provides a four-year term for a borough president. Const. art. 10, § 1, and Charter 1906, §§ 122, 302, give the Governor power to remove him for cause, giving him a copy of the charges against him and an opportunity to be heard in his defense. Charter 1906, § 302, provides that a vacancy in the office of borough president shall be filled for the unexpired term by the votes of a majority of all the members of the board of aldermen then in office representing the borough. *Held* that, where the Governor removed from office a borough president, the removal conclusively determined that the officer was in legal contemplation an unfit person to continue to perform the public trust appertaining to his office during the term which then attached to the office, and the removal covered the entire term, and the board of aldermen had no power to reinstate the removed officer to serve for the remainder of the term.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 348; Dec. Dig. § 160.*]

Houghton, J., dissenting.

Appeal from Special Term, New York County.

Quo warranto by the. People against John F. Ahearn. A demurrer to the complaint was sustained (113 N. Y. Supp. 876), and plaintiff appeals. Reversed, and demurrer overruled, with leave to answer.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, LAUGHLIN, and SCOTT, JJ.

Edward R. O'Malley, Atty. Gen., and Ezra P. Prentice, Dep. Atty. Gen., for the People.

Nelson S. Spencer (Charles H. Strong, on the brief), for committee of citizens.

Martin W. Littleton and Fredk. Allis, for respondent.

SCOTT, J. The plaintiff appeals from a final judgment sustaining a demurrer to the complaint.

The action is in quo warranto, and calls in question the title of the defendant to the office of president of the borough of Manhattan, city of New York. The facts are exceedingly simple. The office of borough president is created by the Greater New York charter, which provides for the election of a president by the electors of the borough and that he shall hold his office for a term of four years. He may be removed in the same manner as the mayor. Charter 1906, p. 227, § 302. Any vacancy in the office of borough president is to be filled for the unexpired term by the votes of a majority of all the members of the board of aldermen then in office representing the borough. Id. The defendant was elected at the general election in November, 1905, for a term of four years commencing on the 1st day of January, 1906. In July, 1907, charges in writing were duly made and preferred against him, and presented to and filed with the Governor of the state. A copy of said charges was served upon defendant, and he was given an opportunity to be heard thereon in his defense, and was, in fact, so heard. On December 9, 1907, the Governor removed him from his said office of borough president. On December 19, 1907, the members of the board of aldermen of the city of New York then in office representing the borough of Manhattan, at a meeting duly called for that purpose, by a majority vote, voted for and undertook to elect defendant to fill the vacancy for the unexpired term caused by his removal from office by the Governor. It is in pursuance of such election or appointment that the defendant now occupies, and claims to be entitled to hold, the office of president of the borough of Manhattan. He does not question in this action the power of the Governor to remove him, nor the regularity and sufficiency of the proceedings which culminated in his removal, but rests his present claim of title to the office wholly upon his election by the aldermen. The sole question, therefore, raised by the demurrer is whether or not the defendant was eligible to appointment to the office to fill for the unexpired term the vacancy caused by his removal therefrom.

The statutory provision as to the removal of a borough president is that he may be removed in the same manner as the mayor. Section 302, Charter 1906. The mayor may be removed from office

by the Governor in the same manner as sheriffs. Section 122, p. 78, Id. The removal of sheriffs is provided for by section 1 of article 10 of the Constitution, which provides that:

"The Governor may remove any officer in this section mentioned, within the term for which he shall have been elected; giving to such officer a copy of the charges against him and an opportunity of being heard in his defense."

This procedure was followed in the case of the defendant. Although the removal by the Governor is an executive act, and therefore not reviewable by the courts (Matter of Guden, 171 N. Y. 529, 64 N. E. 451), it is not one to be performed arbitrarily or otherwise than in accordance with the procedure prescribed by the Constitution. There must be "charges" against the officer, and he must be afforded an opportunity to be heard "in his defense." The use of these words implies that the charges must be of such a nature as to call for a defense from the accused officer; or, in other words, there must be charged against him something which, if proven and not successfully met by way of defense, will indicate his unfitness to continue to hold the office from which it is sought to remove him. We are bound to assume that the Governor, to whom has been confided by the Constitution the sole power to · determine whether the charges are sufficient to warrant removal, and have been proven, will exercise this important duty honestly and lawfully. When, therefore, the Governor has exercised the power of removal, his act is to be taken as a final and conclusive determination by the officer to whom the · Constitution has committed the power so to determine that the removed officer is unfit to continue to hold for the remainder of his term the office from which he is removed. That the people can lawfully re-elect the removed officer for a succeeding term, if he be not otherwise disqualified, is not doubted; but that is not the question now before us, which relates solely to the eligibility of the removed officer to be appointed to fill the vacancy during the remainder of the same term. Such an appointment, although made in the present case by a vote of the aldermen, and in the charter denominated an "election," is not an election, but an appointment within the meaning of those words as used in the Constitution. Article 10, § 2. Public office implies much more than the right to physically occupy a specified room, to exercise certain powers, and to receive a prescribed emolument. "The idea of an officer clearly embraces the idea of tenure, duration, fees or emoluments, rights and powers, as well as that of duty; a public station or employment; an employment confirmed by appointment of government." Burrill's Law Dict. tit. "Office"; People v. Nostrand, 46 N. Y. 375. "Public office as used in the Constitution has respect to a permanent trust to be exercised in behalf of the government, or of all citizens who may need the intervention of a public functionary or officer, and in all matters within the range of the duties pertaining to the character of the trust. It means the right to exercise generally, and in all proper cases, the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by

law." Matter of Oaths, 20 Johns. 492; Matter of Hathaway, 71 N. Y. 238.. Many other authorities might be cited to the same effect. They all agree in finding in the definition of a public office the idea of a public trust and of a prescribed and defined term or tenure, so that each term is an entity separate and distinct from all other terms of the same office. U. S. v. Hartwell, 6 Wall. 385, 18 L. Ed. 830; U. S. v. Germaine, 99 U. S. 508, 25 L. Ed. 482; Hall v. Wisconsin, 103 U. S. 5, 26 L. Ed. · 302; Auffmordt v. Hedden, 137 U. S. 310, 11 Sup. Ct. 103, 34 L. Ed. 674; People v. Duane, 121 N. Y. 367, 24 N. E. 845; Wardlaw v. Mayor (Super.) 19 N. Y. Supp. 6; Thurston v. Clark, 107 Cal. 285, 40 Pac. 435; Mechem on Public Offices, § 1.

Up to the time of defendant's removal therefrom he held a public office, which implied and included the right and duty to exercise the functions of a public trust for a defined term. His removal from office conclusively determined, in legal contemplation, that he was an unfit person to continue to perform that public trust during the term which then attached to the office from which he was removed. His removal separated him in the manner provided by law from his office, and from every incident of the office, and this, as we consider, was the clear intent of the Constitution. To permit the immediate reinstatement of the same person to the same office for the same term would nullify the constitutional provision for removal. If so, it is clearly illegal. It is not possible to believe that the framers of the Constitution and the people who adopted it, after providing so carefully for the removal of an unfit officer, intended that such removal should be rendered nugatory by the immediate reappointment of the same person to fill out the unexpired term from which he had just been removed. The diligence of counsel and our own researches have resulted in finding no case in this state, and very few elsewhere, in which this precise question has arisen. It did so arise, and was discussed in State v. Rose, 74 Kan. 262, 86 Pac. 296, 6 L. R. A. (N. S.) 843; State v. Dart, 57 Minn. 261, 59 N. W. 190; State v. Welsh, 109 Iowa, 19, 79 N. W. 369.

In State v. Rose, supra, the defendant had been ousted in an action of quo warranto from the office of mayor of Kansas City. At a special election held to fill the vacancy thus created Rose was re-elected. The judgment of ouster restrained him from exercising the powers and receiving the emoluments of the office of mayor "for and during the term for which he was elected," and the proceeding in the case cited was one to punish him for contempt in again assuming the office. The court did not rest its decision upon the prohibition contained in the judgment of ouster, apparently deeming that the express prohibition added nothing to the effectiveness or scope of the judgment. Its decision was placed upon the broader ground that, by reason of his ouster, Rose was ineligible to re-election for the remainder of the term. After citing some of the cases hereinbefore referred to, defining the nature and scope of a public office, the court, then proceeding to its conclusion, said:

"What was involved in the proceeding [the ouster case]? And of what was the defendant deprived by the ouster? * * * The office of mayor which

was conferred on the defendant at the general city election in 1905 was not a transient or occasional trust. The office, with its rights and privileges, was given to him for a fixed time. It was a two-year trust; an entire thing. * * * The right to exercise the functions of the office of mayor, and to enjoy its privileges for the two-year term, was an entity conferred on the defendant, and it was that which was taken from him by the quo warranto proceeding. * * * The resignation or the removal of an officer during his term and the election and appointment of his successor do not divide the term or create a new and designated one. The successor is filling out his predecessor's term, and, when the defendant re-entered the office and undertook to exercise its duties, he was simply filling out a portion of the very term which he had decided he was never to hold. Since, under the law, he had forfeited and was ousted from the right to occupy the office for the remainder of the term, no subsequent election or appointment could restore him to that which he was adjudged to have forfeited and lost. The electors of the city are as much bound by the law as their representatives and officers, and the special election did not warrant the defendant in ignoring or violating the judgment rendered under the law. * * * The statute authorizing removal would serve little purpose if the district judge could appoint the unfaithful officer (county attorney) for the term forfeited, and thus again invest him with the opportunity to continue the violations of duty and of law. Suppose a county clerk who was engaged in peculations with the connivance of the board of county commissioners was removed from office. The board, which has the power to fill the vacancy, might be willing to give the defaulter a new lease of power to continue his frauds against the public to the end of the term; but to allow it to be done would be trifling with justice. No such purpose can reasonably be imputed to the Legislature."

It will be seen that in this case the court pushed the contention now made by the appellant further than it is necessary to go in the present case by holding that even the electors could not re-elect a removed officer to fill out the remainder of his vacant term.

In State v. Dart, supra, a county treasurer had been removed for his official misconduct. Afterwards the board of county commissioners, which had authority to fill the vacancy, appointed him to fill out the term. The Supreme Court said:

"The removal proceedings cannot be nullified or reversed in that manner. Such removal proceedings are not merely for the purpose of ousting the person holding the office. They include a charge that he has forfeited his qualifications for the office for the remainder of the term. They are brought to declare a forfeiture of a civil right, his eligibility, his qualification to hold that office for the rest of that term. The proceeding is not brought for his removal for a day, or a week, or a month of his term, but for the whole of the remainder of his term. * * * Nothing less is involved in the proceedings. Whether the voters at the polls could condone the offense by which he forfeited his office it is not necessary here to decide. We are of the opinion that the county commissioners could not do so."

In State v. Welsh, supra, the Supreme Court of Iowa went to the extent of holding that an officer might be removed during one term to which he had been re-elected for misconduct or neglect of duty during the previous term. In the course of the opinion it is said:

"The commission of any of the prohibited acts the day before quite as particularly stamps him as an improper person to be intrusted with the performance of the duties of the particular office as though done the day after. The fact of guilt with respect to that office warrants the conclusion that he may no longer with safety be trusted in discharging his duties."

The case cited and relied upon by the defendant—Matter of Advisory Opinion, 31 Fla. 1, 12 South. 114, 18 L. R. A. 595—in so far

as it has any bearing upon the present case, favors the contention of the appellants. The precise question passed upon was whether the suspension and removal of an officer during one term operated to prevent his selection for a subsequent term. This question the court answered in the negative. The court, however, expressly recognized the rule that removal during a term involved a removal for the whole term, saying that, if the Senate had acquiesced in the Governor's removal, "the removal would have been from that term of office." The completed act of removal in that state consisted of a suspension by the Governor, and a removal by the Senate, and the court said:

"The final consummation intended by a suspension must always be a removal of the officer; and this removal is from the remainder of the term from which he is suspended, and nothing more. The remainder of the existing term is, including its rights and incidents, in our judgment, all that the removal can act on or affect. * * * Such removal, made at the time just indicated, would have taken from him forever the office and all its emoluments for the remainder of the term."

The case of State v. Jersey City, 25 N. J. Law, 536, also much relied upon by defendant, is not controlling. A member of the common council had been expelled for misconduct and afterwards re-elected by the electors. Nothing further was decided than that the electors might condone an offense which had justified an expulsion from office. The effect of such expulsion upon the term from which removal was made, or the power of an appointing body, other than the electors themselves, to reinstate the removed officer were not referred to or discussed. As remarked in Matter of Guden, 71 App. Div. 422, 75 N. Y. Supp. 794, the case is merely an authority to the effect that the common council of Jersey City had no power to expel or virtually suspend, a member for acts committed previous to his election, and that such member, having been once expelled for official corruption and re-elected by the electors, could not be again expelled or suspended for the same identical offense. In the present case there is no question of a re-election by the electors, but merely the reinstatement of an unfaithful trustee into an office which he has forfeited by his official misconduct by members of the board of aldermen, who are themselves but trustees for the electors.

Much stress is laid by defendant upon the vigorous condemnation by the present Chief Justice of the Court of Appeals of chapter 33, p. 41, Laws 1901, which abrogated the official terms of the police commissioners of the city of New York then in office. Devery v. Coler, 173 N. Y. 103, 65 N. E. 956. That act provided for the appointment by the mayor of a single police commissioner, who might be removed by the mayor or the Governor, whenever in the opinion of either the public interests might so require, and who, if removed, was made forever ineligible to reappointment. The learned judge expressed the opinion that the provision for removal by the Governor and that rendering the removed commissioners ineligible to reappointment were both unconstitutional. The other members of the court expressly declined to pass upon either of these questions, and the opinion therefore stands, so far as concerns these two questions, not as a binding authority, but as a most forcible and persuasive argument in support of the con-

clusion arrived at. But even from this point of view it has little or no bearing upon the present controversy. The defendant expressly waives and disclaims any question of the Governor's power to remove him. The ineligibility which Judge Cullen condemned was perpetual, and the removal provided for was purely arbitrary, depending only upon the belief on the part of the removing officer that the public interests required it. The expression in the opinion that "a removal does not involve any reflection on the official or personal character of the officer removed" must be read with reference to the arbitrary removal, without charges or trial, with which the opinion dealt; for, as Judge Cullen said, "if removal could be made only for misconduct upon charges, a very different question might arise." It is our duty to construe the New York City charter so as to give effect to the purpose of the lawmakers, and to obviate the anticipated evils which were sought to be guarded against. Delafield v. Brady, 108 N. Y. 524, 15 N. E. 428; In re O'Neill, 91 N. Y. 516; People ex rel. Wood v. Lacombe, 99 N. Y. 43, 1 N. E. 599. Reading all the pertinent provisions of the charter together, we find that the Legislature has provided a four-year term for the borough presidents; that it has provided for their removal by the Governor, but only upon charges and after a hearing; that to fill a vacancy thus created it has vested in the aldermen representing the borough the purely executive function of filling the vacancy for the unexpired term. Each of these provisions should be so construed as to give full effect to the legislative intent. There can be no doubt that the Legislature in providing for removal intended that act to be effective and complete so as to entirely separate the delinquent officer from his office and all the incidents thereof. Whatever power of condonation may rest in the electors, none rests in the aldermen. Their duty is to fill the vacancy, but in doing this they are not authorized to nullify and render ineffectual the removal, and thus defeat the very purpose for which the power to remove was created. Our conclusion is that the attempted reappointment of the defendant to fill the unexpired term of the office from which he had been removed was illegal, null, and void.

It follows that the judgment appealed from must be reversed, with costs, and the demurrer overruled, with costs, with leave to defendant to withdraw his demurrer and answer within 20 days upon payment of said costs. All concur, except HOUGHTON, J., who dissents.

HOUGHTON, J. (dissenting). Removal of the incumbent was only one of several ways by which the office of president of the borough of Manhattan could become vacant. While providing how a vacancy could be filled, the Legislature, neither by the public officers law nor by the provision which it made for the removal of the president of a borough, saw fit to declare that the removed incumbent should be ineligible for election or appointment to the vacancy. In order to hold the defendant ineligible for election to the vacancy caused by his own removal, a provision making him ineligible must be read into the statute.

It is conceded, and must be conceded, that the people could, if they saw fit, elect the defendant to the office from which he had been re-

moved, for a subsequent term. It seems to me that it must also be conceded that, if the law had required the vacancy to be filled by special election, the voters, had they seen fit, could have elected the defendant to fill his own unexpired term. In the absence of specific disqualification because of removal, it would be going altogether too far, it seems to me, to say that the people themselves could not choose their own incumbent to the office for the unexpired term, and could not choose the removed defendant if they so desired. If the people themselves could do this in the absence of specific disqualification, I think it follows that the board of aldermen, upon whom the Legislature conferred the power to fill the vacancy, could also do it. So far as filling a vacancy is concerned, the board of aldermen stands in the place of the people themselves, and what the people could do the board could do. It does not meet the question, as I read article 10, § 2, Const., to say the filling of the vacancy by the board of aldermen is a mere appointment to office. It is the prescribed mode of filling a vacancy to avoid a special election which the Legislature could as well have prescribed if it had chosen.

It is true that the holding that a removed incumbent is not ineligible for appointment to fill the vacancy caused by his own removal may not meet the spirit of the law, and might create, as it has, a controversy between the Governor, to whom the people have delegated the power of removal, and the appointing board, to which the people have delegated the power of filling a vacancy. To my mind the remedy is with the Legislature, and not with the courts.

I think the interlocutory judgment was proper, and should be affirmed.