## DAY v. SHARP.

### (*Knoxville.* September Term, 1913.)

**COUNTIES.   Officers.   Eligibility and qualification.   "Office."**

Const., art. 2, sec. 25, provides that no person who has been a collector or holder of public moneys shall hold any other State office until he shall have accounted for and paid into the treasury all sums for which he may be liable. Shannon's Code, sec. 1069, excepts from eligibility to office defaulters to the treasury at the time of election and declares the election of such person void. Defendant's election to the office of trustee of a county was void because he was then a defaulter, and after a judgment by the inducting authority that he was ineligible, but that a vacancy was thereby created, he settled his default and was elected by the county court to such office. *Held*, on petition of resistance to his induction therein, that the word "office," as used in the constitution and statute, implied the right to exercise the functions of a public trust or employment and to receive the fees and emoluments belonging to it and to hold the place for the term prescribed by law; that "office for a term" was an entity; and that the removal of an officer for disqualification did not operate to divide the term or create a new and distinct term, so that the default and consequent disqualification did not merely affect a part of the term but made him ineligible for election by the county court to hold the remnant of the term. *(Post, pp.* 343-349.)

Code cited and construed:   Sec. 1069 (S.).

Constitution cited and construed:   Sec. 25, art. 2.

Cases cited and approved:   Lewis v. Watkins, 71 Tenn., 174; State, ex rel. Childs, v. Dart, 57 Minn., 261; State v. Rose, 74 Kan., 262; United States v. Hartwell, 6 Wall., 385; People v. Duane, 121 N. Y., 367; People v. Ahearn, 196 N. Y., 221.

---

### FROM CLAIBORNE.

---

Appeal from Criminal and Law Court, Claiborne County.—XEN HICKS, Judge.

JOHN P. DAVIS, for appellant.

PAUL E. DIVINE, and MONTGOMERY & MONTGOMERY, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

A. K. Sharp, claiming to be the holder of a certificate of his election to the office of trustee of Claiborne county at the regular August, 1912, election, presented himself with his certificate to the proper inducting authority for induction into the office. Thereupon W. C. Parkey, who was the then incumbent of the office of trustee and also a candidate for re-election, filed a petition in pursuance of the statute resisting Sharp's induction on the ground, among others, that at the date of the August election, and also at the date of Sharp's application to be inducted, he (Sharp) was a defaulter to the treasury as circuit court clerk of the county.

Upon hearing the case the inducting authority adjudged that by reason of said default, found to exist, Sharp was ineligible to hold the office of trustee, but further that a vacancy was thereby occasioned in the office of trustee; and this last finding was certified to the quarterly county court to the end that that body by an election by it might fill the office thus adjudged to be vacant. The quarterly county court proceeded

thereon to elect Sharp to the office in respect of which he had been held to be ineligible.

Sharp procured a certificate of election from the quarterly county court for induction thereon, and on its presentation W. N. Day interposed his petition of resistance as a citizen and taxpayer of the county on the ground that Sharp was a defaulter. Sharp, intermediate the popular election and the date of the election attempted to be held by the quarterly county court, settled his default in an effort to qualify himself for the office.

Defendant Sharp does not claim under the election at the polls in August, 1912; but, on the contrary, he insists that he acquiesces in the decree of the county court, the inducting authority, to the effect that he was on and after that election day a defaulter, and that the election was therefore void; and he insists that thereafter, and before his election by the quarterly term of the county court, his payment of the amount of his default rendered him eligible at the later election. He relies alone upon his election by the quarterly county court to fill the claimed vacancy.

It is an insistence of Day that Sharp could not make himself eligible by thus purging himself of the taint of the default. It is argued that it would be opposed to the policy as well as the provisions of the law to permit one, ineligible to office by reason of his default, to render himself eligible for the same office during the same term by a payment of the amount of his delinquency.

The constitution, art. 2, sec. 25, provides: "No person who heretofore hath been, or may hereafter be, a collector or holder of public moneys, shall . . . hold any other office under the State government, until such person shall have accounted for, and paid into the treasury, all sums for which he may be accountable or liable."

Code, Shannon, Sec. 1069, providing for eligibility to hold office, makes, among others, this exception:

"(4)  Those who are defaulters to the treasury at the time of the election, and the election of any such person shall be void."

It was held in *Lewis* v. *Watkins,* 3 Lea, 174, 182, that the point of time to test the eligibility of the candidate is the day of the election, under the statute; that the constitution is differently worded and might admit of less rigid legislation.  But, applying this test, did the settled default of Sharp operate to affect and render void what is claimed to have been his after-election by the quarterly court?

The purpose of the constitutional and statutory provisions may be said to be twofold:  To discourage official defaulting to the treasury; and, where that has occurred, to encourage a purging thereof by settlement. Had Sharp settled his delinquency prior to the day of the August election, it seems clear that he would have been eligible.  But were there, or could there have been, two distinct elections of Sharp to office during the period of the single term, the last of which elections may not be denounced as void or invalid?

In the case of *State, ex rel., Childs* v. *Dart,* 57 Minn., .261, 59 N. W., 190, it appeared that a county treasurer was removed in a proper proceeding for the misappropriation of public funds. Afterwards the board of county commissioners, which had authority to fill the vacancy, elected him to fill out the term. The question arose whether there was power in the board to thus reinvest him with the office. The court said: "The removal proceedings cannot be nullified or reversed in that manner. Such removal proceedings are not merely for the purpose of ousting the person holding the office; they include a charge that he has forfeited his qualification for the office for the remainder of the term. They are brought to declare a forfeiture of a civil right, his eligibility, his qualification to hold that office for the rest of that term. The proceeding is not brought for his removal from a day or a week or a month of his term, but for the whole of the remainder of his term. . . . Nothing less is involved in the proceeding. Whether the voters at the polls could condone the offense by which he forfeited his office it is not necessary here to decide. We are of the opinion that the county commissioners could not do so."

The same principle was announced in *State* v. *Rose* 74 Kan., 262; 86 Pac., 296, 6 L. R. A. (N. S.), 843, 10 Ann. Cas., 927, writ of error dismissed 203 U. S., 580, 27 Sup. Ct., 779, 51 L. Ed., 326, where it appeared that an officer by official misconduct during his term had forfeited his office, and the forfeiture had been judicially declared. It was held that the judgment oper-

·ated to deprive him of the right to take or hold the office during the remainder of the term to which he had been elected, even under a re-election at the polls. The court said: "Suppose a county clerk, who was engaged in peculation with the connivance of the board of county commissioners, was removed from office; the board, which has the power to fill the vacancy, might be willing to give the defaulter a new lease of power to continue his frauds against the public until the end of the term, but to allow it to be done would be trifling with justice. No such purpose can reasonably be imputed to the legislature. Counsel for the defendant were inclined to concede that an officer removed for dereliction of duty could not be reappointed to fill the vacancy, but contended that a different rule obtains where provision is made for filling the vacancy by election. . . . The protection of the public is involved in the proceeding and judgment. Nothing in the statute suggests that electors, even, can condone the misfeasance, revive the forfeited right, or limit the effect or enforcement of a judgment of ouster."

It will be noted that in each of the cases the acts, resulting in disqualification, occurred while the term of office was current, while here the act of default to the treasury is argued to have been committed before Sharp's term as trustee began. He, however, continued in default to and within the period of time covered by that term, and he was adjudged disqualified for his default so existing. His attempt at absolution by payment was after the period covered by that term

had begun to run. . Can this case be, on principle, differentiated?

In our opinion this question involves a consideration of what is the meaning of the word "office" used in the constitution and statute. The word has been held, in such connection, to imply the right to exercise the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place for the term prescribed by law. *State* v. *Rose,* supra; *United States* v. *Hartwell,* 6 Wall., 385, 393, 18 L. Ed., 830, 832; *People* v. *Duane,* 121 N. Y., 367, 375, 24 N. E., 845.

Office for a term has been described as an entity in so far as that a removal, for disqualification, of an officer does not operate to divide the term or create a new and distinct one. "In such a case the successor is filling out his predecessor's term; and, when the defendant re-entered the office and undertook to exercise its duties, he was simply serving a portion of the very term which the court had decided he was unfit to hold." *State* v. *Rose,* supra.

In *People* v. *Ahearn,* 131 App. Div., 30, 115 N. Y. Supp., 664 (1909), it was held that a removal conclusively determined that the officer was in legal contemplation an unfit person to continue to perform the public trust appertaining to his office during the term, and that the removal covered the entire term, so that it was not within the power of the board of aldermen of the city of New York to reinstate him to serve for the remainder of the term. On appeal from this judgment

of the appellate division, the court of appeals of New York, in writing for affirmance, through Judge Hiscock, said: "Doubtless we might say, as so earnestly urged by counsel, that the strict letter of the statute would be satisfied by a removal which ousted appellant from his office for a day or an hour until some appointing power could reinstate him. But if we consider the general scope and purpose of this statute we shall be led to the conclusion that the legislature must have contemplated and intended more than this, and that the language which it employed is susceptible of a construction which will carry out its purpose. . . . It is equally clear, and will doubtless be so conceded in anything which may be said or written on the other side of the question, that this purpose will be frustrated and the administration of the law turned into a farce if under it an official may be immediately reappointed and a removal turned into a mere temporary suspension. In order to avoid such a result, and keeping in mind the purpose of the statute, we are justified, in my judgment, in construing the removal for which it provides as meaning a permanent and lasting ouster for the entire remaining term of the incumbent from the office which he has been filling or whose obligations he has been found unable or unwilling to discharge. As was well said by Mr. Justice Scott at the appellate division, an office implies 'much more than the right to physically occupy a certain room, to exercise certain power, and to receive a prescribed emolument.' So far as its beneficial aspect was concerned, appellant's office

consisted of the right to enjoy certain powers, privileges, honors, and emoluments for a given term, and, when the statute prescribed that he should be removed, it may be construed to mean that he should be removed from and deprived of all that which thus made up his office, namely, the right to enjoy these things for and during the entire term for which he had originally been selected. It is, of course, true, as is urged by counsel, that we do not speak of removing an officer from his 'term' of office. But the right to enjoy for a certain period the privileges and profits of a given position is an important element of an office in its complete conception, and a removal from office under the conditions here present may fairly mean a dismissal for that period from those rights and privileges.'' *People* v. *Ahearn*, 196 N. Y., 221, 229, 89 N. E., 930, 26 L. R. A. (N. S.), 1153. In accord in its reasoning is Advisory Opinion, 31 Fla., 1, 12 South., 114, 18 L. R. A., 594, and *contra State, ex rel.,* v. *Jersey City*, 25 N. J. Law, 536.

Office or election to office being thus conceived of as impying not merely place but term or tenure as well, we are of opinion that the reasoning of the courts in the above-cited cases applies here; and that under the provision of the statute to the effect that the election to office ''of any such person (defaulter) shall be void,'' an election of Sharp at the polls in August, 1912, if assumed, was not nullified for a period less than the prescribed term of the office, so far as Sharp was concerned as beneficiary. His default and consequent disqualification did not merely affect a part of the term.

Day v. Sharp.

The result is that he was not eligible to be elected by the quarterly county court to hold the remnant of that term.

The lower court held to the contrary. Its judgment is therefore reversed. Costs below and on appeal will be paid by A. K. Sharp.