STATE *ex rel.* THOMPSON, ATTORNEY-GENERAL, *v.*
CRUMP *et al.*

*Nashville.* December Term, 1915.

1. **MUNICIPAL CORPORATIONS.** Ouster proceedings. "Oust." "Office."

Laws 1915, ch. 11, entitled "An act to provide for the removal of unfaithful public officers, and providing a procedure therefor," declares in section 1 that any State, county, or municipal officer who knowingly or willfully misconducts himself in office or who knowingly or willfully neglects to perform any duty enjoined upon him by the laws of the State, or who shall become intoxicated, engage in gambling or violate any penal statute involving moral turpitude, shall forfeit his office and be ousted. Section 8 declares that, if a defendant be found guilty, judgment of ouster shall be rendered against him, but there is no provision in the act attaching to a judgment of ouster any disqualification on the part of the ousted official to hold any other office or to hold the same office thereafter. Defendants, when ousted from the offices of mayor and vice mayor of the city, had already been elected for other terms which would commence in the future. *Held* that, as the word "oust" means to put out or eject, and as the word "office" embraces the idea of tenure and term, defendants, by reason of being ousted from the offices of mayor and vice mayor, could not be precluded from subsequently qualifying for such other additional terms; for until they qualified they were not the incumbents of the office. (*Post, pp.* 127-137.)

Acts cited and construed: Acts 1915, ch. 11.

Cases cited and approved. State ex rel. v. Malone, 131 Tenn., 149; Day v. Sharp, 128 Tenn., 340; United States v. Hartwell,

State ex rel. v. Crump.

6 Wall. (U. S.), 385; State ex rel. v. Dart, 57 Minn., 261; State v. Rose, 74 Kan., 262; State v. Johnson, 18 L. R. A., 410.

Cases cited and distinguished:  Advisory Opinion, 31 Fla., 1; People v. Ahearn, 196 N. Y., 221.

2. **JURY.  Ouster proceedings.  Jury trial.**

In a proceeding to oust municipal officers under Laws 1915, ch. 11, such officers are not entitled to a jury trial.  (*Post, p.* 137.)

3. **MUNICIPAL CORPORATIONS.  Ouster.  Proceeding.**

Const., art. 5, sec. 4, declares that the governor, judges, etc., shall be liable to impeachment whenever they shall commit any crime in their official capacity which may require disqualification, and shall also be liable to indictment, trial, and punishment according to law.  Section 5 provides that justices of the peace and other civil officers, for crimes and misdemeanors in office, shall be liable to indictment, and upon conviction shall be removed from office as if found guilty on impeachment, and shall be subject to such other punishment as may be prescribed. Laws 1915, ch. 11, provides for the ousting of municipal officers for misconduct.  *Held* that, though the mayor and vice mayor of a city be deemed civil officers, the act applies to them; the constitutional provision being merely to provide for the punishment of civil officers committing crimes, and the removal from office being a mere incident thereto which remedy is not exclusive.  (*Post, pp.* 137, 143.)

Acts cited and construed:  Acts 1915, ch. 11, 37.

Cases cited and approved:  Halsey v. Gaines, 70 Tenn., 347; State ex rel. v. Howse, 132 Tenn., 452; Territory v. Sanches, 20 Ann. Cas., 112; Sevier v. Justices, 7 Tenn., 335; Tipton v. Harris, 7 Tenn., 414; Fields v. State, 8 Tenn., 168.

Case cited and distinguished:  Smith v. Normant, 13 Tenn., 272.

Code cited and construed:  Sec. 5165 (S.).

State ex rel. v. Crump.

4. **STATUTES. Title. Scope.**

Laws 1915, ch. 11, entitled "An act to provide for the removal of unfaithful public officers, and providing a procedure therefor," provides in sections 11 and 12 for the summoning of witnesses and compelling them to testify, but declares that in case of self-incrimination they shall not be punished for the offenses as to which they are compelled to testify. *Held*, that such sections are within the scope of the title of the act. (*Post, p.* 143.)

5. **CONSTITUTIONAL LAW. Determination of validity. Questions presented.**

Where the validity of particular sections of a statute was not in question, that matter will not be determined. (*Post, p.* 143.)

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —Francis Fentress, Chancellor; F. H. Heiskell, Chancellor sitting by courtesy.

Appealed to the April Term, 1916, at Jackson, for the Western division, but transferred to Nashville and advanced and heard at the December Term, 1915.

T. K. Riddick, J. L. McRee, Barton & Barton and K. T. McConnico, for appellants.

F. M. Thompson, Attorney-General, P. W. Lanier and G. T. Fitzhugh, for appellee.

Mr. Justice Green delivered the opinion of the Court.

This bill was filed by the State, on relation of the attorney-general, against Edward H. Crump, mayor of the city of Memphis, R. A. Utley, vice mayor and

commissioner of the department of fire and police of the city of Memphis, Oliver H. Perry, inspector of police of the city of Memphis, and W. M. Stanton, city judge of Memphis, to remove them from their several positions on account of alleged misconduct in office. The suit was instituted on October 14, 1915, and was based on chapter 11 of the Acts of 1915, known as the Ouster Law.

The bill averred that defendant Crump was first inducted into the office of mayor of Memphis in January, 1910, and that he was thereafter re-elected for a term of four years beginning January 1, 1912, and it appeared from the bill that said Crump was again re-elected to the said office for a term beginning January 1, 1916.

It was averred that R. A. Utley was first inducted into the office of vice mayor and commissioner of the department of fire and police in 1912, for a term of four years, and it appeared that he was also re-elected in April, 1915, for another term beginning January 1, 1916.

It was averred that defendant Stanton was elected to the office of city judge by the commissioners of the city of Memphis in the summer of 1915, apparently to fill out an unexpired term which ended January 1, 1916.

Proceedings against defendant Perry were dismissed below, and there was no appeal on the part of complainant, and the case against him need not therefore be further noticed.

The bill filed by the attorney-general was quite lengthy, and charged defendants Crump, Utley, and Staton with various acts of misfeasance and nonfeasance in office covering the entire time during which they held their several positions. It was charged that they had neglected to enforce the laws against the sale of liquor, against gambling, and against prostitution, that they had connived at and encouraged the violation of these laws, and that there existed and had been conducted, during their terms, in open violation of law, in the city of Memphis, numerous liquor saloons, gambling houses, and houses of ill fame. All these matters were set out in detail, and the bill charged the employment of certain colorable devices by which the defendants permitted the aforesaid unlawful occupations to be pursued in the city of Memphis.

Passing over some of the preliminary steps taken by the defendants, and noticing only those things which are before us on this appeal, it is sufficient to say that defendants filed an answer to the bill of the attorney-general in which they denied many of the charges made against them, and assailed the Ouster Act as unconstitutional, and contended that at any rate said act had no application to them. Defendants also demanded a jury to try the issues of fact, and raised some other questions which will be noticed in the course of this opinion.

The chancellors were of opinion that chapter 11 of the Acts of 1915 was constitutional, and that it did

apply to the defendants, and they were furthermore of opinion that defendants were not entitled to a jury trial. Certain other questions of law were likewise determined adversely to defendants, and the case was thereupon set for hearing on its merits by the chancellors.

When the case was called for trial, counsel were asked for a preliminary statement of the issues and the probable course of the proof. Counsel for the attorney-general told the court that they expected to prove and had witnesses ready to prove every material allegation of the bill.

Counsel for defendants thereupon stated that, relying on all the preliminary questions made by them, such as the right to trial by jury, the applicability of the act, etc., and desiring an early determination of those questions by this court, they had concluded to introduce no proof and thereby delay final determination of the cause. They agreed that for the purposes of this case they would admit that the attorney-general could prove all the relevant charges made against defendants in the bill.

After much controversy between the court and counsel as to the effect of this admission, the chancellors proceeded to treat the facts charged in the bill as if they were facts proven, and pronounced a judgment of ouster against the defendants.

We do not deem it necessary to dwell upon the discussion of counsel as to the effect of defendants' admission. According to the language of defendants'

State ex rel. v. Crump.

counsel, the relevant facts charged in the bill were admitted to be true for the purposes of this case. "This case" is the only case we are here undertaking to determine, and we accordingly treat the charges of the bill as true.

The decree of the chancellors herein removing defendants from office was pronounced November 4, 1915.

The first question presented for our determination is as to the effect of this decree upon the terms of defendants Crump and Utley beginning January 1, 1916. Their terms pending at the date of the decree expired January 1, 1916.

These defendants insist that their terms, beginning January 1, 1916, were not in issue in the proceedings below, and were not affected thereby. Defendants were assuming that such was the case, and were about to qualify and enter into the offices of mayor and vice mayor, to which they had been elected in April, 1915, for terms beginning January 1, 1916, when they were restrained from so doing by an interlocutory order heretofore made by this court. The court thought it best to preserve the existing *status* until the case was finally determined.

It is insisted on behalf of the State that the decree of November 4, 1915, was effective, not only to remove defendants Crump and Utley from their offices for the terms they were then serving, ending January 1, 1916, but, that said decree deprived said defendants of all

rights to their future terms, beginning January 1, 1916, to which they had been elected in April 1915.

There has been much discussion as to whether the 1916-20 terms of defendants Crump and Utley were fairly involved upon the pleadings in this case, and likewise as to whether the decree below undertook to adjudicate anything with reference to defendants' rights respecting these terms. We do not find it necessary to consider either the pleadings or the decree to determine this dispute. To reach the true result, we must go further back and examine the act upon which these pleadings and this decree are based and ascertain from this statute if proceedings had thereunder can by any possibility affect defendants' enjoyment of a term of office not then current.

Chapter 11 of the Acts of 1915, known as the Ouster Act, is entitled:

"An act to provide for the removal of unfaithful public officers, and providing a procedure therefor."

The first section of the act provides that any State, county, or municipal officer who knowingly or willfully misconducts himself in office or who knowingly or willfully neglects to perform any duty enjoined upon him by the laws of the State, or who shall become intoxicated, engaged in gambling, or violate any penal statute involving moral turpitude "shall forfeit his office, and shall be ousted from such office in the manner hereinafter provided."

Section 8 of this statute provides:

"That if the defendant shall be found guilty, judg-
ment of ouster shall be rendered against him, and he
shall be ousted from his office."

. There is no provision whatever in the act .attach-
ing to a judgement of ouster any disqualification on
the part of the ousted official to hold and other office
in the State or to hold the same office thereafter. It
was stated at the bar that the bill originally contained
this feature, but that such provision for disqualifica-
tion was eliminated before it was finally enacted into
a law.

The sole penalty provided by the statute is that a
defendant · found guilty thereunder shall forfeit his
office or shall be ousted from his office.

What, then, was defendant Crump's "office," and
what was defendant Utley's "office," at the time of
the institution of the present suit and at the time of
final decree?

This court has recently had several occasions to
consider the matter of title to office and possession of
office. In *State ex rel.* v. *Malone,* 131 Tenn., 149, 174
S. W., 257, a sheriff-elect died between the time of his
election and the date fixed by law for the beginning
of the term. After his death the county court as-
sumed that there was a vacancy in his office, and
proceeded to elect his successor. This court, how-
ever, held that deceased never acquired the office, and
never possessed it, inasmuch as he had never exe-
cuted bond and taken the oath. It was accordingly

concluded that, since deceased died prior to his qualification, his death created no vacancy in the office. The case was the same as if there had been no election at all, and the old official was adjudged entitled to hold over, under well-known provisions of the law. It follows from this decision that defendants Crump and Utley had no title accrued to their offices for the 1916-20 term at any time during the proceedings below. They were not in office at the time of the chancellors' decree in such a way as that the death of either of them would have created a vacancy in office for the 1916-20 term; that is to say, they were not in possession of these offices for this subsequent term.

To "oust" means "to put out of possession; to eject, or dispossess or deprive of." International Dictionary. Our statute gives no additional force to the word. There can therefore be no ouster without previous possession, and the contrary contention involves a contradiction in terms and disregard of the meaning of the English language.

But to return to the legal definition of the term "office" and to a consideration of the legal effect of removing one from office. In the late case of *Day* v. *Sharp*, 128 Tenn., 340, 161 S. W., 994, the court said that "office" implied, "not merely place, but term or tenure as well."

In *Day* v. *Sharp*, supra, the court quoted with approval the case of *United States* v. *Hartwell*, 6 Wall. (U. S.), 385, 18 L. Ed., 830, in which it was said that

the term "office" "embraces the ideas of tenure, dura-
tion, emolument, and duties."

Likewise this court cited with approval *State ex rel.
v. Dart,* 57 Minn., 261, 59 N. W., 190; *State* v. *Rose,* 74
Kan., 262, 86 Pac., 296, 6 L. R. A. (N. S.), 843, 10 Ann.
Cas., 927; *People* v. *Ahearn,* 196 N. Y., 221, 89 N. E.,
930, 26 L. R. A. (N. S.), 1153.

In the cases just referred to certain officials were
removed from office or declared ineligible for office
during the terms to which they had been elected, and
undertook to have themselves re-elected to fill out the
unexpired portions of the identical terms.    Under
these facts in all these cases it was held that the par-
ticular term or tenure of the officer was a part of and
included in his office, and that, when he was removed
from his office, he was removed for the particular term
or tenure he was then enjoying.

So when one is removed from an office, he is re-
moved for the current term, and he cannot thereafter
be re-elected to that term.  This is so because the term
is part of the office.

Accordingly, when defendants were removed from
the offices of mayor and vice-mayor, they were de-
prived of the right to exercise certain functions and
receive certain compensation, and they were deprived
of that right for their terms then current.  A removal
from office extends to the limit of the current term,
but such removal, unless a statute give it greater
effect, cannot go beyond the current term because the
office itself is limited by the term.  If we go beyond

the current term, then we have to deal with another office.

Another case referred to in *Day* v. *Sharp,* which the court said was in accord with the reasoning of *Day* v. *Sharp,* was *Advisory Opinion,* 31 Fla., 1, 12 South.; 114, 18 L. R. A., 594.

In the latter case one Johnson was tax collector of Duval county, Florida. He was elected for a term beginning in January, 1891, and ending in January, 1893. He was re-elected in the early part of October, 1892, for another term beginning in January, 1893, and ending in January, 1895. On October 29, 1892, after his re-election, he was suspended from office for misconduct, under provisions of the Florida laws. Under these circumstances the governor of Florida was in doubt as to whether he should issue to Johnson, pending his suspension, a commission for the term to which he had been elected, beginning in 1893, and submitted this question to the supreme court of Florida. The court concluded that it was the duty of the governor so to issue such commission, and said:

"The final consummation intended by a suspension must, as shown in *State* v. *Johnson* (30 Fla., 433, 11 South., 845), 18 L. R. A., 410, lately decided, always be a removal of the officer; and this removal is for the remainder of the term from which he is suspended, and nothing more.

The remainder of the existing term is, including its incidents and rights, in our judgment, all the removal

can act on or affect.   There is certainly no express provision in the organic law that it shall affect any other term; nor is the officer in the exercise of other official functions than those covered by his title to the pending term.

"Again, the constitution has not given to the suspension or removal the effect of disqualifying the suspended or removed person from holding the same or any other office in the future; on the contrary, not only is there an utter absence of any such provision, but an intention that it shall not have this effect is also shown in a separate and distinct declaration of what the framers of the constitution and the people intended should have that effect, which declaration is to be found in the fifth section of the sixth article.   That section directs the legislature to enact the necessary laws to exclude from every office of honor, power, trust, or profit, civil or military, within the State, all persons convicted of bribery, perjury, larceny, or of infamous crime, and for other causes therein stated, yet provides that this legal disability shall not accrue until after trial and conviction in due form of law. The legislation enforcing this section is to be found in Revised Statutes, section 211; and the 214th section enacts that every office shall be deemed vacant upon the conviction of the incumbent of any felony or of an offense involving a violation of his official oath.

"The limited effect which it was intended that the suspensions and removals under discussion should have is also shown by the provision of the section

which authorizes them (section 15, art. 4) that 'the suspension or removal herein authorized shall not relieve the officer from indictment for any misdemeanor in office.'

''A suspension or removal not having of itself the effect to taint the person or officer, either while suspended or after removal, with any disqualification to hold any office, we are unable to see how it can affect his right to exercise the functions of a future term of the same office. He is as qualified for or as eligible to election to a future term pending the suspension, or after the removal, as he was before the suspension. . . .

''Perhaps it may be said that it is contrary to good public policy that a person who has been suspended during one term of an office should be permitted to enter upon the duties of a subsequent term of the same office, pending such suspension. To this the answer is that a public policy which would impose upon the citizen disabilities as to official station must at least be consistent with the organic law which defines the requisites for such station, and not antagonistic thereto. If the constitution attached to the removal, whenever it might be consummated by the concurrence of the senate, a disability to hold the succeeding or future term or terms of the same office, it might naturally and logically follow that, pending the suspension, the functions of the succeeding term could not be performed; but, where it fails entirely, as it does, to give even the removal, whenever consummated, any such

effect, no room is left as a standing place for any such theory of public policy.''

The foregoing Advisory Opinion is referred to by the editor of volume 18, L. R. A., 591, as presenting an unusual question. The question being unusual, and the court's conclusion so well reasoned, we have thought it proper to make the extended quotation.

We find the Florida case referred to only twice—in *Day* v. *Sharp*, supra, as above stated, and in *People* v. *Ahearn*, supra. It seems to be exactly in point here.

In *People* v. *Ahearn* a borough president had been removed from office, and his rights were being considered under a subsequent appointment to the same term of the same office. It was argued that, if defendant's removal was to be construed as having the effect of barring him from appointment to the vacancy created by his removal, it must likewise be regarded as having effected a general disqualification to hold any office.

The New York court of appeals said:

''That argument does not require serious attention. The defendant was tried on charges affecting his administration of a certain office during a certain term, and as a punishment he was removed from that office. Because such removal barred him from immediate appointment to fill the vacancy for the unexpired term, it ought not to be seriously claimed that it disqualified him to take some other office or to be elected to a new term of the same office, neither of which were in any way involved in his trial and from neither of

which he was removed." *People* v. *Ahearn,* 196 N. Y., 221, 89 N. E., 930, 26 L. R. A. (N. S.), 1153.

It is urged, however, that inasmuch as these defendants had already been elected to office to the 1916-20 term, at the time the ouster suit was filed, they had some sort of title to the office which could be involved and set aside in the ouster proceedings.

This argument is difficult to follow. The Ouster Act was passed to remove unworthy public servants from offices they held, not to contest their qualifications for other offices or other terms of the same office. No judgment of disqualification to hold any other office or any other term of the same office can be pronounced in an ouster suit.

Without doubt defendants might have been elected at any time after the decree passed in the case below to the 1916-20 term of their offices; for the judgment of ouster imposed absolutely no disqualification upon them. Since the judgment of ouster in no way affected their eligibility for the subsequent term, and since in such proceedings the validity of their election could not be called into question, it seems utterly immaterial that the election to the 1916-20 term was held prior to the rendition of the court's judgment below. This election did not put them in possession of any offices, as shown in *State ex rel.* v. *Malone,* supra, and without possession there can be no ouster. The election without qualification did not make them public officers, and they were therefore not within the purview of the statute as to the future term. To contend that there

can be an ouster when there has been no entry, under our statute, is an argument too paradoxical to require further notice.

We do not find the authorities relied on by learned counsel for the attorney-general in this connection to be relevant to the facts of this case, and consequently omit any discussion of them.

While from what has been said it seems that little can be accomplished by this particular proceeding, since the terms of the offices in litigation have expired, nevertheless we find it necessary to dispose of other questions arising in the case, inasmuch as salaries and costs are involved.

The first assignment of error makes the point that the defendants below were entitled to a jury to try the issues of fact presented by the pleadings in this case. It is to be doubted whether defendants are in any position to make such a question in this court after conceding for the purposes of the case that the pertinent allegations of the bill were to be taken as true. If they could, however, reserve the jury question under these circumstances, it has been fully treated by the court and their contention overruled in the case of *State ex rel.* v. *Howse,* and need not be discussed here.

The second assignment of error goes to the action of the chancellors in holding chapter 11 of the Acts of 1915 applicable to the present defendants. It is contended that defendants are civil officers within the meaning of section 5 of article 5 of the constitution of Tennessee, and that, as such civil officers, they can

only be proceeded against and removed from office by criminal prosecution or indictment under the said section of the constitution.

An elaborate argument is made by counsel for defendants in which they undertake to demonstrate that defendants are civil officers within the meaning of the constitution. This question is difficult, but for the purposes of this decision only it will be conceded that defendants are civil officers within the meaning of the constitution.

In order to get the context and intelligently consider the constitutional provisions relied on, we set out sections 4 and 5 of article 5 of the constitution of Tennessee, as follows:

"Sec. 4. *Who may be impeached.*—The governor, judges of the supreme court, judges of the inferior courts, chancellors, attorneys for the State, treasurer, comptroller and secretary of State, shall be liable to impeachment, whenever they may, in the opinion of the house of representatives, commit any crime in their official capacity which may require disqualification; but judgment shall only extend to removal from office, and disqualification to fill any office thereafter. The party shall, nevertheless, be liable to indictment, trial, judgment and punishment according to law. The legislature now has, and shall continue to have, power to relieve from the penalties imposed, upon any person disqualified from holding office by the judgment of a court of impeachment."

"Sec. 5. *Officers Liable to Indictment.*—Justices of the peace, and other civil officers, not hereinbefore mentioned, for crimes and misdemeanors in office, shall be liable to indictment in such courts as the legislature may direct; and upon conviction, shall be. removed from office by said court, as if found guilty on impeachment; and shall be subject to such other punishment as may be prescribed by law."

The argument for defendants is that, when the constitution provides the causes for the removal of an officer and the procedure under which such removal is to be accomplished, such provisions are exclusive, and such officers cannot be removed for any other cause or in any other manner. We are referred to Judge Catron's observation, as follows:

"Whenever a State constitution prescribes a particular manner in which power shall be executed, it prohibits every other mode of executing such power. On that particular subject, the authority is exhausted by the constitutional provision, and an attempt to render it nugatory by law would be an attempt at repeal. The constitution being the paramount law, the act of assembly coming in conflict would be void." *Smith* v. *Normant,* 5 Yerg. (13 Tenn.), 272.

To the same effect see Cooley's Constitutional Limitations, p. 99; Mechem on Public Officers, sec. 457; dissenting opinion of Judge Freeman in *Halsey* v. *Gaines,* 2 Lea (70 Tenn.), 347.

It is urged that by section 5 of article 5 of the constitution, above quoted, the procedure for removal of cer-

tain civil officers is provided; namely, by indictment in such courts as the legislature may direct, and upon conviction therein. It is accordingly contended that, the defendants being such civil officers and the constitution having prescribed a method for their removal, the method so prescribed is exclusive, and defendants may not be removed from office in any other way.

The vice in this argument lies in the assumption that section 5 of article 5 of the constitution designs primarily to provide a method for the removal of the civil officers therein mentioned. Such is not the real object of this section.

The dominant purpose of this section of the constitution is to provide for the indictment or criminal prosecution of the civil officers indicated. As a part of the penalty to be inflicted upon conviction, officials are to be removed from office as prescribed, and to suffer any other punishment fixed by the legislature. The removal of the officer is incidental in this section. The true subject thereof is the indictment and criminal prosecution of the officer.

This is made manifest by a comparison of section 4 of article 5 of the constitution with this section 5 of the same article.

Section 4 provides both for the removal and for the criminal prosecution of the governor, judges, and officers therein named. Section 4 provides that the governor, judges, and others shall be liable to impeachment by the house of representatives and removed from office, disqualified, etc. It also provides that the

governor and others shall be liable to indictment, trial, judgment, and punishment according to law.

Section 5, however, contains no provisions with reference to bare proceedings for removal. The simple removal of officers is not considered in section 5 at all. No method is provided or suggested for removal alone. Section 5 is obviously intended to secure criminal prosecution of those committing crimes and misdemeanors in office, and, as said before, removal from office is only an incident or part of the punishment following conviction.

Inasmuch therefore, as the constitution has not undertaken to regulate proceedings for the removal of officers when such proceedings are civil in character, it follows that it was competent for the legislature to formulate a scheme of its own.

As observed in *State ex rel. v. Howse,* 132 Tenn., 452, 178 S. W., 1110, ouster proceedings are civil in their nature. Such is the weight of authority. See cases collected in note to *Territory v. Sanches,* 20 Ann. Cas., 112.

Section 5 of article 5 relates alone to criminal proceedings against the officers therein named. No civil remedy is suggested. The matter of civil procedure is left entirely open.

We have a number of cases sustaining the removal of officers by civil procedure, where such officers have been guilty of offenses punishable by indictment and criminal prosecution. In such civil proceedings the defendant is not entitled to the constitutional rights he

might demand in a criminal prosecution. These civil proceedings are merely collateral to criminal proceedings which result incidentally upon conviction in a judgment of removal. *Sevier* v. *Justices,* 7 Tenn. (Peck), 335; *Tipton* v. *Harris,* 7 Tenn. (Peck), 414; *Fields* v. *State,* 8 Tenn. (Mart. &. Y.), 168.

Consider also proceedings against public officers under our so called quo warranto statutes contained in Shannon's Code, sec. 5165, et seq.

Our cases are in accord with the general rule. Speaking of statutory removals by civil procedure in court, it is said:

"In these cases of removals by courts the courts may remove one for an offense which is punishable criminally, even where such person has not been convicted on an indictment for such offense, and the constitutional provisions that one shall not be answerable for a criminal offense except on indictment do not apply." 29 Cyc., 1407.

The other assignments of error interposed in behalf of defendants go to the liability of defendants to proceedings under the Ouster Act for misdemeanors committed in terms of office previous to the one pending at the time of the suit, and to misdemeanors committed prior to the passage of the Ouster Act, and prior to the passage of chapter 37, Acts of 1915, imposing certain duties upon municipal officers. These assignments raise no material issues whatever in this case, and need not be considered by the court. The more flagrant misdemeanors charged against these defend-

ants were committed during the terms pending at the time this bill was filed, and after the passage of the Ouster Act, and after the passage of chapter 37 of the Acts of 1915. All these charges of fact being admitted, there was abundant evidence to justify the decree of the court below.

In a supplemental brief filed for defendants it is insisted that sections 11 and 12 of the act are without its caption and are otherwise objectionable. We think these sections are within the title. If we should conclude such sections violated other provisions of the constitution, it would be our duty to elide them from the statute in a proper case in accordance with section 16 of the same statute. Sections 11 and 12 have not, however, been invoked in this case, and there is no occasion to test their validity.

It results that the decree of the chancellors is affirmed. Said decree does not, however, affect the rights of defendants Crump and Utley to their term beginning January 1, 1916. The order heretofore entered restraining them from qualifying for their offices for the 1916-20 term is vacated and set aside.